J. Wade **KENNEDY**, d/b/a Kennedy Partners Limited, Plaintiff,

v.

**WILLIAM R. HUDON, INC.;** William R. Hudon; and United Cable Television Corporation, Defendants.

**Civ. A. No. 86–K–1085.**

United States District Court, D. Colorado.

May 11, 1987.

John R. Webb, Nancy Johnson, Denver, Colo., for United Cable TV Corp.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This diversity action is based upon various tort and contract claims. Plaintiff claims interference with contractual relations (sixth claim for relief), breach of escrow contract (seventh claim for relief), promissory estoppel (eighth claim for relief), conspiracy to defraud (tenth claim for relief), and unjust enrichment (eleventh claim for relief). Both parties filed motions for partial summary judgment. I now rule on these motions.

## I.

### STATEMENT OF FACTS

At all relevant times, plaintiff was involved in the business of investment banking and the raising of venture capital. Defendant Hudon was also an investment banker. In early 1985 plaintiff, Hudon, and Anthony Fahnestock[1] allegedly entered into a partnership agreement under which the three agreed to act as agents for defendant United Cable Television Corporation (United) in an effort to place—on a best effort basis—the securities offered in United's private offering, known as the East San Fernando Valley cable project (Valley, Ltd.). United sought to acquire financing for the upstart venture and enlisted the services of the Hudon/Kennedy/Fahnestock investment banking partnership to acquire the necessary capital.[2] Under the agreement, United was to pay the triumvirate $412,000 and 2.75% of the venture's partnership interest. Plaintiff alleges, under the initial agreement between the three partners, each was to receive one third of the cash fee, and one third of the 2.75% interest in the venture (Valley, Ltd.) as compensation for placing the offering.

Miles C. Cortez, Jr., Kathleen S. Hanrahan, Englewood, Colo., for plaintiff.

Bryan Morgan, Denver, Colo., for Wm. R. Hudon, Inc. and individually.

1. Mr. Fahnstock is an investment banker and partner to Hudon and Kennedy in the Valley, Ltd. offering. He is not, however, a party to this action.

2. See plaintiff's second amended complaint (January 16, 1987), p. 2.

In August of 1985 a dispute arose between plaintiff and defendant Hudon concerning the partners' allocation of the fee to be paid by defendant United upon closure of the Valley, Ltd. financing. On or about August 8, 1985 plaintiff alerted United's representative, Gary Howard, of the partners' fee splitting dispute. In pertinent part this letter from plaintiff to Howard stated:

Gary, my purpose in writing this letter is not to expect you to intervene and solve our problems, but rather to advise you that this most threatening problem has arisen and that it must be resolved before a placement can be closed.

August 8, 1985 correspondence from J. Wade Kennedy to Gary Howard of United (defendant's exhibit A).

A month later, by letter dated September 11, 1985, Mr. Howard responded:

Dear Wade:

We have no interest in participating in the fee dispute among the agents placing the East San Fernando Valley private offering. We intend to pay the placement fees in the amounts agreed at closing. We will pay any disputed amount into escrow, if necessary, while you resolve your differences.

September 11, 1985 correspondence from Gary Howard to J. Wade Kennedy (defendant's exhibit E).

On or about September 16, 1985, plaintiff again corresponded with Gary Howard regarding the dispute:

... For my part, without question, I am agreeable to placing any amount of disputed fees into an escrow account, and I appreciate that this is also the view of yourself and United. Further, I would hope that Bill Hudon would also be agreeable to such a course, if the matter were not entirely resolved before closing any portion of the financing, but clearly it is not appropriate for me to speak for him.

September 16, 1985 correspondence from J. Wade Kennedy to Gary Howard (defendant's exhibit F).

After September 16, 1985 United paid the amount of $412,000 to defendant Hudon's corporation. United also apparently conveyed the 2.75% special limited partnership interest in Valley, Ltd. to Hudon's corporation. Hudon has not remitted to Kennedy the fee share to which Kennedy believes himself entitled. This failure to remit is the essence of the case. For the purpose of the motions upon which I rule, the actions and duties of defendant United and its representatives are at issue.

## II.

### STANDARD OF DECISION

The established litany tells us that summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.Proc. In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). The adverse party, however, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

## III.

### CONCLUSIONS OF LAW

I will now rule separately upon plaintiff's various claims against defendant United Cable Television Corporation.

A. *SIXTH CLAIM FOR RELIEF—Tortious Interference with Fee Agreement.*

Plaintiff's sixth claim attempts to establish tortious interference with contractual relations. Plaintiff claims that United had actual notice of a fee agreement involving Kennedy and Hudon, and intended to cause a breach of this fee allocation agreement. Plaintiff asserts the salience of this sixth

claim is, in any event, a factual dispute and therefore inappropriate for summary judgment.

Kennedy cites *Comtrol, Inc. v. Mountain States Telephone and Telegraph Company*, 32 Colo.App. 384, 513 P.2d 1082 (1973) in support of his tortious interference argument. The Colorado Court of Appeals sets forth the specific elements of this tort in *Comtrol, Inc., supra.*

(1) existence of a valid contract between plaintiff and a third party; (2) knowledge by the defendant of this contract, or knowledge of facts which should lead him to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract by the third party; (4) action by defendant which induces breach of contract; and (5) damage to the plaintiff. [citations omitted]

*Comtrol, Inc., supra* at 1084.

United contends that *no* facts support elements (2) and (4) above.[3] United claims, "Gary Howard denies any knowledge of a contract among the three investment bankers."[4] The problem with this contention is plaintiff's exhibit I—which consists of parts of the deposition of Mr. Howard (specifically pp. 98–127)—clearly indicate that Mr. Howard read plaintiff's August 8, 1985 letter in which facts are presented "which should lead him to inquire as to the existence of the contract" between plaintiff and Hudon. *Comtrol, Inc., supra* at 1084. A question of fact obviously exists as to the second element of this tort.

█ To satisfy the fourth element, the following question must be asked and answered: Did United take action which induced a breach of the Kennedy/Hudon contract? This question must be answered in the negative. Plaintiff submits two cases and the *Restatement (Second) of Torts* § 766 as support for his position. The factual situations in plaintiff's cases are not even remotely related to the instant case. *Comptrol, Inc., supra,* concerned a Colora-

do hospital which contracted with the plaintiff for a survey of its communications system. Defendant later learned of the agreement and offered to conduct a similar survey for the hospital free of charge. The hospital later breached its contract with the plaintiff and instead allowed defendant to conduct the free survey. The Colorado Court of Appeals held it was error for the trial court to dismiss the plaintiff's complaint for tortious interference with contractual relations. The *Comptrol, Inc., supra,* factual scenario, however, differs dramatically from that involved in the instant case. The *Comptrol* situation involves two competing communications analysts, one of whom had actual knowledge that the other had contracted with the hospital. This analyst then deliberately sought to undercut his competition and acted to induce a breach for monetary advantage. The case before me is quite different. Although United was notified by letter that a dispute between Kennedy and Hudon existed,[5] no relevant evidence is presented indicating United's representative had knowledge of any specific contract between Kennedy and Hudon. Clearly nothing indicates Howard knew of any agreement's validity, terms, or extent.[6] Further, failure to pay funds into escrow, when no agreement to do so is in force, does not constitute action by defendant to induce a breach of contract.

Plaintiff cites *Restatement (Second) of Torts* § 766 (1977), quoting:

*Intentional Interference with Performance of Contract by Third Person.*

One who intentionally and improperly interferes with performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing a third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Comment h to § 766 states in part:

---

3. See defendant's summary judgment motion, (February 6, 1987), pp. 4–5.

4. *Ibid.,* p. 4.

5. Letter from Wade Kennedy to Gary Howard, September 11, 1985.

6. Defendant's brief, p. 3.

The word inducing refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if he is willing to suffer the consequences. Inducement operates on the mind of the person induced. ...

Several problems confront plaintiff, however, as he attempts to apply this analysis to his specific situation. For one thing, plaintiff chooses to leave out important language contained in Comment h to § 766. Comment h goes on to state:

> The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other. (On purpose and intent, see Comment J).

*Restatement (Second) of Torts* § 766, Comment h.

Comment j to § 766, entitled *Intent and Purpose,* states in relevant part:

> If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is endeavoring to advance some interest of his own, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff the interference may be found to be not improper.

*Restatement (Second) of Torts* § 766, Comment j.

Plaintiff's sixth claim against United is obtuse. In essence plaintiff claims that by pursuing the original contract terms (i.e. paying the partnership the agreed fee via Hudon) United has induced the breach. United does not advance any interest of its own by remitting payment to Hudon rather than depositing the fee into an escrow account. Plaintiff's argument for tortious interference is rendered even more nescient by the fact that plaintiff himself was contractually allied with Hudon.

Clearly plaintiff's sixth claim stretches this tort beyond its traditional confines. Summary judgment is granted in favor of defendant with regard to plaintiff's sixth claim.

### B. *SEVENTH CLAIM FOR RELIEF— Breach of Escrow Contract.*

Plaintiff's seventh claim for relief contends a valid escrow agreement existed between Kennedy and United and the latter breached that agreement. Plaintiff's theory is United's representative (Gary Howard) made an offer to deposit the fee into escrow, and plaintiff later accepted this offer. This claim holds no general issue of material fact. The complete correspondence purported to constitute the contract is before me.

■ Howard wrote plaintiff the following language on September 11, 1985: "We will pay any disputed amount into escrow, if necessary, while you resolve your differences." According to plaintiff, this statement constitutes the offer. On September 16, 1985 plaintiff wrote to Howard: "For my part, without question, I am agreeable to placing any amount of disputed fees into an escrow account, and I appreciate that this is also the view of yourself and United." Plaintiff claims this constitutes a valid acceptance of his offer, Consideration being either mutual promises or the promise not to hold up the sale of Valley, Ltd. securities. Plaintiff has several problems with this claim.

Whether Mr. Howard's letter of September 16, 1985 constitutes a valid offer is debatable, especially with its uncertain "if necessary" language. What I find most troublesome, however, despite plaintiff's lengthy brief, is this "contract's" distinct lack of meaningful consideration. Plaintiff quotes the *Restatement (Second) of Contracts* § 71 (1981): "To constitute consideration, a performance or a return promise must be bargained for ..." Kennedy made no express promises in his letter, and he did not offer to undertake performance of any new obligation. Rather, plaintiff

had a preexisting duty to attempt in good faith to place United's securities. A preexisting duty is not consideration. *Restatement (Second) of Contracts* § 73 (1981). Kennedy was acting as an agent for United in placing its securities. He was, therefore, obligated by his duty of loyalty not to delay closing. *Brunner v. Horton*, 702 P.2d 283 (Colo.App.1985); *McKinney v. Christmas*, 143 Colo. 361, 353 P.2d 373 (1960). Plaintiff's contention that forbearance from taking whatever legal or equitable action may have been available to him to secure his share of the placement fee is unconvincing. Such reasoning implies that consideration always exists where some future legal action is a possibility, no matter how meritless or remote. This "contract" is flawed by a lack of both certainty and meaningful consideration. Moreover, in his September 16 letter to Howard, plaintiff recognized the lack of mutuality by saying, "Further, I would like to hope that Bill Hudon would also be agreeable to such a course ..., but clearly it is not appropriate for me to speak for him."

Summary judgment is granted in favor of defendant on the seventh claim.

## C. *EIGHTH CLAIM FOR RELIEF— Promissory Estoppel.*

The doctrine of promisory estoppel is set out in the *Restatement (Second) of Contracts* § 90 (1981) as follows:

Promise reasonably inducing action or forbearance.

(1) Promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

■ According to *Shoemaker v. Mountain States Tel. & Tel. Co.*, 38 Colo. App. 321, 324, 559 P.2d 721, 723 (1976), "Promissory Estoppel is an equitable doctine designed to create binding agreements in the interest of fairness to one detrimen-

tally relying on the promise of another." *See also Hunter v. Hayes*, 533 P.2d 952 (Colo.App.1975); *Mooney v. Craddock*, 35 Colo.App. 20, 530 P.2d 1302 (1974). The purpose of promissory estoppel is to bridge the lack of consideration gap by using detriment of promisee to supply consideration necessary to enforce the promise. *Prudential Ins. Co. v. Clark*, 456 F.2d 932 (5th Cir.1972). It is also important to note the rule that in determining whether a party is estopped, equitable considerations properly include evaluation of formality of promise, and whether there is unjust enrichment. *Granfield v. Catholic Univ. of America*, 530 F.2d 1035 (D.C.Cir.1976).

The Supreme Court of Colorado has stated:

We believe that the doctrine as set forth in the Restatement should be applied to prevent injustice where there has not been mutual agreement by the parties on all essential terms of a contract, but a promise was made which the promissor should reasonably have expected to induce action or forbearance and the promise in fact induced such action or forbearance. [citations omitted].

*Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo.1982). Further, according to *Duren, Inc. v. City of Lakewood*, 709 P.2d 74 (Colo.App.1985), "... While estoppel is normally a question of fact, there can be no estoppel as a matter of law where reliance is not justified." [citations omitted].

■ I believe two factors are important when reviewing Kennedy's promissory estoppel claim. First, it is relevant that Kennedy was an experienced underwriting agent with at least some degree of sophistication in matters relating to business agreements and escrow accounts. This plaintiff is not the unsophisticated Ms. Jones in *Jones v. Star Credit Corp.* [citations omitted] studied in the first year law school curriculum. Plaintiff knew that manifest assent from Hudon to escrow the fees was necessary. Further, he knew Howard's September 11 letter to him utilized qualifying, "if necessary" language.

After reviewing the various documents, depositions, and affidavits I find sufficient facts to determine reliance was unjustified and, in fact, non-existent. Kennedy vaguely claims in his deposition that he had phone conversations with Howard in late September or October which led him to believe he could rely on an escrow of the fee. These alleged phone conversations cannot change the fact that Kennedy knew Hudon's concurrence was essential and Howard was never Hudon's agent. I therefore grant summary judgment on plaintiff's eighth claim in favor of United.

### D. *TENTH CLAIM FOR RELIEF— Conspiracy to Defraud.*

█ Plaintiff maintains he spoke on the phone with Gary Howard after September 11, 1985 about the escrow "agreement". Plaintiff contends Howard told him Hudon was agreeable to escrowing the disputed fee.[7] Hudon's deposition testimony is in direct conflict with this assertion. Plaintiff claims this discrepancy constitutes a question of fact thus negating the availability of summary judgment. In order to maintain his action for conspiracy to defraud, the law requires plaintiff to prove Howard's intent at the time he allegedly promised to escrow the funds. *State Bank of Wiley v. States*, 723 P.2d 159 (Colo.App. 1986). Questions of intent such as those involved in conspiracy and fraud seldom lend themselves to summary judgment treatment. The test is obviously distinct from that used in determining the eighth claim.

Summary judgment as to plaintiff's tenth claim for relief is denied.

### E. *ELEVENTH CLAIM FOR RELIEF—Unjust Enrichment.*

The essential elements of unjust enrichment are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Stokes v. International Media Systems,* 686 P.2d 1368, 1369 (Colo.App.1984), *citing Mountain Medical Inc. v. City of Colorado Springs,* 43 Colo.App. 391, 608 P.2d 821 (1979). The Colorado rule is clear. "If the party conferring the benefit [Kennedy] does so pursuant to a contract with a third party [Hudon], then nonperformance by the other party to the contract [Hudon] does not entitle the party conferring the benefit [Kennedy] to repayment from the recipient [United]." *Stokes, supra* at 1369.

*Restatement of Restitution* § 110 (1937) states:

A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.

█ The documents in this file amply demonstrate Kennedy and Hudon had a fee-splitting agreement. The two investment bankers were, in fact, partners. United paid the full agreed-upon fee to the partnership via Hudon. Hudon then allegedly did not split this fee with Kennedy as agreed. Having paid the full contract value of the services rendered by the Hudon/Kennedy partnership, it is legally impermissible to allow plaintiff's unjust enrichment claim against United to lie, simply because Hudon may not have paid plaintiff his fair share.

Summary judgment on plaintiff's eleventh claim for relief is granted in favor of defendant.

### F. *Plaintiff's request for oral argument on these summary judgment issues is denied as an unnecessary allocation of the court's time.*

### IV.

### CONCLUSION

Plaintiff maintains a number of claims centering on whether the correspondence and conversations between United and

---

7. See plaintiff's exhibit G.

plaintiff formed an actionable contract. A putative escrow agreement was unaccompanied by meaningful consideration, given plaintiff's pre-existing duty to act in good faith in placing the securities in a way most benificial to his principal. Further, an uncertainty of terms existed, and there was a consequent lack of mutuality.

I did not grant summary judgment in favor of defendant on plaintiff's tenth claim since questions of fact precluded me from doing so. Whether plaintiff should persist in his claims against United should be seriously considered by him with a sense of immediacy.

IT IS THEREFORE ORDERED:

1. Summary judgment as to plaintiff's sixth claim for relief is granted in favor of UNITED.
2. Summary judgment as to plaintiff's seventh claim for relief is granted in favor of UNITED.
3. Summary judgment as to plaintiff's eighth claim for relief is granted in favor of UNITED.
4. Summary judgment as to plaintiff's tenth claim for relief is denied.
5. Summary judgment as to plaintiff's eleventh claim for relief is granted in favor of UNITED.
6. Oral argument on these summary judgment motions is denied.