**DCB CONSTRUCTION COMPANY, INC.,
Cross–Claimant and Appellee,**

v.

**The CENTRAL CITY DEVELOPMENT
CO., Cross–Claimant and
Appellant.**

**No. 95CA0566.**

Colorado Court of Appeals,
Div. III.

July 25, 1996.

As Modified on Denial of Rehearing
Aug. 29, 1996.

Certiorari Granted Aug. 4, 1997.

Gehler & Merrigan, Thomas E. Merrigan, Commerce City, for Cross–Claimant and Appellee.

Holley, Albertson & Polk, P.C., George Alan Holley, Thomas A. Walsh, Golden, for Cross–Claimant and Appellant.

Opinion by Judge CRISWELL.

The Central City Development Co. (Development Co.), which owns a parcel of real estate in Central City, appeals from the money judgment entered against it and in favor of DCB Construction Company (DCB), based on the district court's determination that DCB's construction work on Development Co.'s property, pursuant to a contract with Development Co.'s lessee, resulted in Development Co. being unjustly enriched. Development Co. also appeals from the court's judgment dismissing its counterclaim for negligent misrepresentation. We reverse the judgment for DCB based on unjust enrichment, but affirm the dismissal of Development Co.'s counterclaim.

### I.

The facts relevant to our consideration of the judgment for unjust enrichment are essentially undisputed.

The property owned by Development Co. in Central City consists of a small lot upon which there was an old, historically significant, two-story commercial building. In January 1992, shortly after the voters amended Colo. Const. art. XVIII, § 9, Development Co., by means of two written leases, leased the property to another party, restricting its use to limited stakes gambling. These two leases were for a term of approximately five years, terminating on January 1, 1997, and they called for total lease payments of some $1,750,000 to be made to Development Co.

Pursuant to the leases, the lessee assumed all responsibility for repairing and maintaining the property, and the lessee was authorized to make alterations and additions of a nature that would not ruin the historic character of the building, provided Development Co. gave consent to any such alterations or additions, which consent Development Co. agreed would not be unreasonably withheld. The leases provided that the lessee would "promptly pay for the costs of all such alterations and additions regardless of the cost," and the lessee agreed to indemnify Development Co. against liability for any claim or lien arising out of such work.

If any claim were made against Development Co., or any lien asserted against the property, because of any alteration or addition, Development Co. was given the right, at its option, to pay the sum required to have any lien released, in which event Development Co. was authorized to collect any such sums from the lessee "as Additional Rent." In addition, the lessee was required to obtain a completion bond in an amount equal to the estimated cost of any alterations before any work commenced.

Finally, the leases provided that, upon their termination, all alterations and additions and all fixtures would become the property of Development Co.

After entering into possession of the property, the lessee had some work performed by another contractor, but ultimately entered into a written, "cost plus," contract with DCB to make internal alterations so as to allow the property to be used as a gambling casino, pursuant to plans approved by Development Co. Originally, it was estimated that the cost of this work would be some $200,000, but the costs ultimately exceeded $300,000.

Before this contract was executed and the work commenced, a written notice was posted, notifying all contractors, subcontractors, and suppliers that Development Co. was not liable for any costs associated with the work and that Development Co.'s interest in the property would not be subject to any lien for such costs. See § 38–22–105(2), C.R.S. (1982 Repl.Vol. 16A). It is undisputed that DCB was aware of such notice.

During the course of the construction work, although one of Development Co.'s representatives came upon the property on occasion to view the progress of the work, DCB did not communicate with Development Co. with respect to the work. Likewise, Development Co. gave DCB no directions with respect to the work.

Because of the lessee's failure to pay amounts due under the construction agreement, DCB ceased work in November 1992, and because of its failure to make rental payments under the leases, Development Co. evicted the lessee in early 1993. Thereafter, DCB and a number of its subcontractors made claims against Development Co. for payments due from the lessee.

Some $50,000, which the lessee had placed in escrow upon demand by Development Co., was used to pay the various subcontractors, and their claims were dismissed. Thereafter, the parties engaged in a bench trial of DCB's unjust enrichment claim, at the end of which the trial court determined that Development Co. had been unjustly enriched by DCB's work. Consequently, it entered judgment against Development Co. for $279,-652.94, representing the amount not paid by the lessee under the construction contract, plus pre-judgment interest on that sum and costs, for a total judgment of $333,191.

Development Co. asserts that, given the undisputed factual circumstances summarized above, a claim for unjust enrichment will not lie, as a matter of law. We agree.

■ Our analysis starts with recognition of the general proposition that the Colorado mechanics' lien statute does not impose any personal liability upon a landowner for work done on the property. Personal liability is permitted only if "the plaintiff proves a contract on which he may recover regardless of the lien act." *Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co.*, 138 Colo. 314, 320, 332 P.2d 892, 895 (1958).

■ However, the filing of a notice of non-liability under the lien act, thereby preventing a lien from attaching to the owner's interest in the property, does not foreclose a direct claim against the landowner under some contractual theory of liability. *Frank M. Hall & Co. v. Southwest Properties Venture*, 747 P.2d 688 (Colo.App.1987).

In such circumstances, there may exist any one of three bases for liability: express contract, contract implied in fact, or contract implied in law.

■ There is little fundamental difference between an express contract and a contract implied in fact. An express contract is one evidenced by the parties' words, while a contract implied in fact arises from the parties' conduct. In either case, however, the words or conduct must evidence a mutual intention by the parties to contract with each other.

*Tuttle v. ANR Freight System, Inc.*, 797 P.2d 825 (Colo.App.1990); *see Ninth District Production Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788 (Colo.1991).

■ This is not true of a claim based upon a contract implied in law (unjust enrichment). On the contrary, such a claim is not one based upon any contract, as such; the obligation under that type of claim arises, "not from consent of the parties, as in the case of contracts, express or implied in fact, but from the law of natural immutable justice and equity." *Valley Realty & Investment Co. v. McMillan*, 160 Colo. 109, 112, 414 P.2d 486, 488 (1966).

DCB does not assert, and the evidence here would not support, any claim based upon the existence of any express contract or contract implied in fact between DCB and Development Co. The sole claim is based upon a contract implied in ·law, or unjust enrichment.

■ To recover under a claim for unjust enrichment, it must be established that:

1. A benefit was conferred upon the defendant;

2. The defendant appreciated the benefit; and

3. "[T]he benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093, 1097 (Colo.1982).

■ Here, while there was substantial evidence questioning whether the work done by DCB added any value to Development Co.'s property, the trial court found that a benefit in a quantifiable amount was bestowed on that property and that Development Co. appreciated that benefit. Although Development Co. asserts that the trial court used the wrong legal standard in determining the existence of any such benefit, we shall accept those findings for our analysis here.

■ However, the mere fact that a benefit has been bestowed and is appreciated is not sufficient to give rise to a claim for unjust enrichment.

Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not itself sufficient to require the other to make restitution therefor.

*Restatement of Restitution, supra*, § 1, comment c at 13.

What circumstances, then, give rise to such an injustice that requiring restitution would be appropriate? According to the *Restatement*, the conferring of a benefit does not give rise to such a claim unless the benefit was conferred as a result of mistake or coercion, was bestowed pursuant to a request from the party to be charged, or was conferred to protect the interest of that party or some third party. *Restatement of Restitution, supra*, § 112.

While this list of circumstances may not be exclusive, nevertheless, prior Colorado jurisprudence confirms that something more than the conferral of a benefit alone is required. *See Moore & Co. v. T–A–L–L, Inc.*, 792 P.2d 794 (Colo.1990) (violation of fiduciary duty); *Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986) (payments upon mortgage that protected landowner's interest in property); *Cablevision of Breckenridge v. Tannhauser Condominium Ass'n, supra* (fraud or conversion of cable television signals); *Wistrand v. Leach Realty Co.*, 147 Colo. 573, 364 P.2d 396 (1961) (by reason of mistaken entry on closing settlement sheet, one of the parties overpaid). *See also Ninth District Production Credit Ass'n v. Ed Duggan, Inc., supra* (if payment by third party is not necessary to preserve collateral, something more than mere acquiescence by secured creditor to such expenditure must be present to justify claim for unjust enrichment).

Here, DCB makes no claim that its work was undertaken as a result of any mistaken belief that Development Co. would be liable therefor; nor is there any claim that its work resulted from some fraud, coercion, or other malefaction either by Development Co. or by some other person. Its sole · assertion of

injustice, aside from the conferral of the benefit itself, appears to be based upon what it considers to be the inordinate value of that benefit. However, DCB has referred us to no court opinion, and we are aware of none, which measures injustice solely on the basis of quantitative monetary enhancement.

■ Further, the benefit conferred upon Development Co.'s property here resulted from the performance of the obligation assumed by DCB in its contract with the lessee, a third party. And, absent special and unique circumstances, a benefit conferred upon a defendant by the performance of such an obligation cannot form the basis for a claim of unjust enrichment against that defendant. *Restatement of Restitution, supra,* § 110 at 455 ("A person who has conferred a benefit upon another as the performance of a contract with a third party is not entitled to restitution from the other merely because of a failure of performance by the third person.").

■ Hence, unless the contract with the third party is "rescindable because of fraud, mistake or duress," the fact that that third party fails to deliver to a plaintiff the consideration called for by the contract provides no proper basis for a claim of unjust enrichment against a person who may have benefitted from that plaintiff's performance of its contractual obligation. This is so, "because a payment made freely and with a knowledge of the facts cannot be recovered unless made in anticipation of a promise" made or implied *by the party benefitted. Restatement of Restitution, supra,* § 110 comment a at 455–456.

This principle recited in *Restatement* § 110 was expressly approved in *Stokes v. International Media Systems, Inc.,* 686 P.2d 1368 (Colo.App.1984). There, the president of a corporation obtained a loan from a bank, but directed that the loan proceeds be provided to the corporation. Upon the president's death without repayment of the loan, the bank sued the corporation for unjust enrichment and obtained a judgment in the trial court. In reversing that judgment, the *Stokes* court summarized the *Restatement* § 110 rule as follows:

If the party conferring the benefit does so pursuant to a contract with a third party, the nonperformance by the other party to the contract does not entitle the party conferring the benefit to repayment from the recipient.

*Stokes v. International Media Systems, Inc., supra,* 686 P.2d at 1370. *See also Kennedy v. William R. Hudon, Inc.,* 659 F.Supp. 900 (D.Colo.1987) (applying Colorado law and dismissing claim on authority of *Stokes* ).

Moreover, the *Restatement* § 110 rule has been applied by numerous courts in a construction contract context under various circumstances.

As pointed out in D. Dobbs, *Law of Remedies,* § 12.20(3) at 469–470 (2d ed.1993), the issue may be presented either when a tenant contracts with a contractor with whom the landowner is not in privity or a subcontractor enters into a sub-sub-contract or contracts with a supplier, with whom neither the landowner nor the general contractor is in privity. While the identity of the parties may vary, the principle remains the same.

■ That principle is that a party who is not in contractual privity with the landowner (or other party against whom an unjust enrichment claim is asserted) cannot recover, except to the extent that the landowner (or other party) holds funds as retainage that are owed to the contractor or sub-contractor. D. Dobbs, *supra.*

Hence, claims seeking to impose personal liability upon such a party under the aegis of unjust enrichment have nearly uniformly been rejected. *See D.A. Hill Co. v. Clevetrust Realty Investors,* 524 Pa. 425, 573 A.2d 1005 (1990) (suit by subcontractor against bank after foreclosure of landowner's interest; relies on *Restatement* § 110); *Silver Dollar Motel, Inc. v. Taylor Electric Co.,* 761 P.2d 1006 (Wyo.1988) (contractor with tenant has no claim against owner for unjust enrichment); *J.W. Thompson Co. v. Welles Products Corp.,* 243 Kan. 503, 758 P.2d 738 (1988) (supplier of sub-contractor has no claim against contractor); *Puttkammer v. Minth,* 83 Wis.2d 686, 266 N.W.2d 361 (1978) (allegation that owner receiving benefit from lessee's contractor acquiesced in having work

done insufficient to state claim for unjust enrichment); *Advance Leasing & Crane Co. v. Del E. Webb Corp.*, 117 Ariz. 451, 453, 573 P.2d 525, 527 (1977) ("[Supplier] assumed the risk that [sub-contractor] would be able to pay. This risk cannot now be shifted to [the general contractor]."); *Guldberg v. Greenfield*, 259 Iowa 873, 146 N.W.2d 298 (1966) (sub-contractor who fails to file for mechanic's lien has no claim against owner for unjust enrichment, citing *Restatement* § 110); *LaChance v. Rigoli*, 325 Mass. 425, 91 N.E.2d 204 (1950) (where tenant contracted for addition to filling station, owner not liable to contractor, citing *Restatement* § 110); *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash.App. 719, 733, 741 P.2d 58, 65 (1987) (Each case authorizing an unjust enrichment claim has "involved some clear act of bad faith by the defendant resulting in the defendant's unjust enrichment at the plaintiff's expense."); *Insulation Contracting & Supply v. Kravco, Inc.*, 209 N.J.Super. 367, 507 A.2d 754 (1986) (denying claim by sub-sub-contractor against general contractor for unjust enrichment, citing *Stokes, supra*, with approval).

One court, *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150 (1966), has allowed a contractor that contracted with the owner's daughter and grandson, who lived with the owner, to recover from the owner. Another court, *Bryson v. Hutton*, 41 N.C.App. 575, 255 S.E.2d 258 (1979), however, has rejected such a claim against a co-owner of the premises improved, where the contractor was aware of the joint ownership but failed to have both owners become parties to the construction contract.

There are several bases for the rule adopted by *Restatement* § 110. One is that no person should be called upon to pay the debt of another without his or her prior assent. And, in the case of a lessor, if, as here, the lease calls for any improvements made by the lessee to become the lessor's property, the lessor has not been enriched at all. That provision of the lease is simply a part of the consideration that the lessee agreed to provide to the lessor in return for the creation of a leasehold in the property by the lessor. *See* D. Dobbs, *supra*, § 12.20(3) at 472–474.

We recognize that, on its face, the opinion in *Frank M. Hall Co. v. Southwest Properties Venture, supra*, appears to be inconsistent both with the principle stated in *Restatement* § 110 and with the earlier opinion in *Stokes v. International Media Systems, Inc., supra*. Indeed, we cannot fault the trial court for relying upon the *Frank M. Hall & Co.* opinion in rendering its judgment in this case.

However, the issue raised by Development Co. and considered by us here was apparently not presented in *Frank M. Hall & Co.*; neither *Restatement* § 110 nor *Stokes* was referred to in that opinion. In any event, to the extent that *Frank M. Hall & Co.* may be read as rejecting the application of *Restatement* § 110 and *Stokes* in a construction contract context, we decline to follow it.

Here, then, the benefit, if any, bestowed upon Development Co. resulted from DCB's performance of a contractual obligation owed by it to the lessee. Further, there was no allegation or proof that such performance resulted from some mistake or from fraud, duress, or other improper conduct by Development Co. On the contrary, the undisputed evidence is that Development Co. gave actual notice to DCB before any work commenced that it would not be liable for any work performed. DCB performed its work placing sole reliance upon the lessee and upon its financial condition. The fact that such reliance was apparently misplaced, and DCB has not received the consideration promised by the lessee, does not render Development Co.'s retention of any benefits bestowed inequitable under *Breckenridge v. Tannhauser Condominium Ass'n, supra*.

Consequently, even if the evidence may support the determination that some benefit was bestowed upon Development Co., it does not, as a matter of law, support the conclusion that such benefit was bestowed or retained unjustly. Hence, the judgment based on unjust enrichment cannot stand.

## II.

Development Co. also argues that the trial court erred in dismissing its claim for negligent misrepresentation. We disagree.

This claim was based upon a written estimate of the expenses required to complete the work, which had been furnished by DCB to the lessee at one point during construction. The estimate was for an amount in excess of $100,000; a copy was provided to Development Co. by the lessee in response to Development Co.'s demand that an escrow fund for payment of such costs be established. However, because the lessee could afford to pay no more, only $50,000 was paid by it into this escrow fund.

In rejecting Development Co.'s counterclaim, the trial court, as the fact finder, determined that there had been a failure of proof for several reasons, including the fact that affirmative evidence from Development Co. was that it had placed no reliance upon this estimate in requiring the escrow deposit.

It is true that the court also referred to the fact that there was no privity between DCB and Development Co. and that, as Development Co. argues, privity is not required as an element of a negligent misrepresentation claim. *See Wolther v. Schaarschmidt,* 738 P.2d 25 (Colo.App.1986).

However, the trial court's finding of a lack of reliance by Development Co. was a sufficient ground, in and of itself, to support dismissal of its counterclaim. If the trial court did, in fact, also rely upon a lack of privity to support its judgment of dismissal, such reliance was harmless, given its other factual findings.

The judgment in favor of DCB is reversed; the judgment dismissing Development Co.'s counterclaim is affirmed.

HUME and KAPELKE, JJ., concur.