**In re James T. HOUFEK, Melinda H. Houfek, Debtor.**

**FIRST DEPOSIT NATIONAL BANK, Plaintiff,**

v.

**James T. HOUFEK, et al., Defendants.**

**Bankruptcy No. 2–90–03087. Adv. No. 2–90–0244.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 1, 1991.

Todd G. Finneran, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT

BARBARA J. SELLERS, Bankruptcy Judge.

### I. PRELIMINARY CONSIDERATIONS

First Deposit National Bank ("First Deposit") filed this adversary proceeding against James and Melinda Houfek on September 17, 1990. In its complaint, First Deposit asserts that its credit card obligation from Melinda Houfek is nondischargeable in the Houfeks' Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A) because the debt was obtained by false pretenses, false representations or actual fraud. The Houfeks denied those allegations and the proceeding was tried to the Court on January 15, 1991. The attorney for the Houfeks also seeks an award of attorney fees under 11 U.S.C. § 523(d).

The Court has jurisdiction in this adversary action under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) which this bankruptcy judge may hear and determine.

### II. STATEMENT AND FINDINGS OF FACTS

The following facts have been agreed to among the parties or are found by the Court from the testimony.

1. In March 1987 Melinda Houfek replied to a mail invitation from First Deposit for a First Select VISA credit card ("VISA") with a cash advance feature.

2. In the cursory application returned to First Deposit, Melinda Houfek indicated she was an unemployed housewife in a family with annual income of $25,000 or above. Melinda Houfek also represented that she was a homeowner.

James C. Ellis, Bogin & Patterson, Dayton, Ohio, for plaintiff.

Lee C. Mittman, Columbus, Ohio, for defendants.

3. The VISA was issued to Melinda Houfek in her name only with a preapproved credit limit of $3,000. Prior to the issuance, First Deposit requested checks of Melinda Houfek's credit record.

4. On April 16, 1987 Melinda Houfek obtained a cash advance on the VISA account in the amount of $3,000. In December 1987 she took another advance in the amount of $1,000. Various small payments were made on those advances, mostly in the minimum amounts, until August 24, 1989 when the account was paid to a zero balance by the remittance of $3,569.25.

5. On November 20, 1989 Melinda Houfek took a new cash advance against the VISA account in the amount of $4,100. No further payments were made on the account.

6. When the Houfeks filed their petition under Chapter 7 of the Bankruptcy Code on May 3, 1990, the balance owing to First Deposit on the VISA account was $4,523.12, representing both principal and interest.

7. During some or all of the period in question Melinda Houfek was suffering from undiagnosed insulin deficiency and was ill. Although she acknowledges her signature on the cash advance of November, 1989, she has no recollection of receiving or spending the $4,100. However, James Houfek handled all of the family's financial affairs, including the payment of bills.

8. James Houfek is a lawyer who is now employed as general counsel for a real estate development construction company. Prior to that employment and during the period at issue in this proceeding, he was part owner of and received most of his income from a real estate development business. He also maintained a small law practice for related work.

9. In 1989 James Houfek's real estate development business declined. After September or October of 1989 he took no draws from that business. His financial problems were severe from that time until the bankruptcy filing on May 3, 1990, although in March of 1990 he obtained his current position.

10. During the period of October 1989 to May 1990, the Houfek family survived by using savings, reducing expenses, selling some assets, using gifts from family and not paying certain bills. James Houfek's only income during that period was from his small law practice. He continued to hope that his real estate business would sell the houses it had already built and continued to market.

11. James Houfek also had little recollection of the $4,100 cash advance from First Deposit, although he indicated it was deposited to a joint account and used to pay bills. It appears that he requested his wife to obtain the cash advance for their household needs.

12. The Houfeks first met with bankruptcy counsel in late March or early April of 1990.

13. James Houfek has no contractual obligation to First Deposit, but directly benefited from the cash advance to his wife.

## III. ISSUES TO BE DETERMINED

There are three issues to be determined by the Court.

A. Is there any factual or legal basis for finding a nondischargeable debt from James Houfek to First Deposit?

B. Do the facts show, at the time the cash advance was taken, that Melinda Houfek intended not to repay First Deposit?

C. If actual intent not to repay is not demonstrated, can false pretenses be shown under 11 U.S.C. § 523(a)(2) if Melinda Houfek knew or should have known, at the time the cash advance was taken, that it could not be repaid?

## IV. DISCUSSION AND LEGAL CONCLUSIONS

The complaint in this adversary proceeding seeks to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A). That section provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money ..., to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud....

11 U.S.C. § 523(a)(2)(A).

### A. *Liability of James Houfek*

■ The first requirement of § 523(a)(2) is that there be a "debt." Melinda Houfek is the only party contractually obligated to First Deposit on the VISA account. However, First Deposit seeks to have its debt declared nondischargeable in James Houfek's bankruptcy case also.

In support of this liability, First Deposit relies upon *Republic Bank v. Vermont (In re Vermont),* 98 B.R. 581 (Bankr.M.D.Fla. 1989). The debtor in *Vermont* had submitted false financial statements to a lender to induce a loan to a corporation of which he was an officer and a shareholder. The debtor had also guaranteed repayment of that loan and, therefore, had a contingent obligation to the lender. Moreover, even though the debtor had not received the loan proceeds, as a literal reading of 11 U.S.C. § 523(a)(2)(B) would seem to require, he had benefitted by the loan to the corporate entity. Accordingly, the debt was held to be nondischargeable.

The facts in *Vermont* are significantly different from the facts now under consideration by this Court. There is no debt between James Houfek and First Deposit. Nor was there any representation from him to First Deposit. Melinda Houfek returned the account application and she signed the cash advance draft. It was drawn on an account issued only in her name and based upon only her credit record. That she apparently gave those proceeds to James Houfek for their joint needs does not make him legally responsible to First Deposit. Therefore, there is no "debt" between James Houfek and First Deposit which can be excepted from discharge. Nothing in Ohio law changes this result. *See Tille v. Finley,* 126 Ohio St. 578 (1933) and *Surgical & Medical Neurology Associates, Inc.* *v. Levan,* 7 Ohio Misc. 11, 454 N.E.2d 604 (Summit Cty.Munic.Ct.1982).

### B. *Actual Intent Not to Repay*

■ No facts were established which would cause this Court to believe that Melinda Houfek intended not to repay First Deposit. Accordingly, actual fraudulent intent will not be found. Nor was there any evidence of misrepresentation in obtaining the credit card.

### C. *False Pretenses By Knowledge or Implied Knowledge That Repayment Was Unlikely*

■ This case does not require extended discussion of the implied representation or assumption of the risk arguments which have been debated in the courts relating to credit card obligations generally. The particular obligation to First Deposit is a cash advance which is more analogous to a direct loan to the cardholder from the issuer, although the authorization preceded the loan by several years. No third party is involved.

The Sixth Circuit, however, has rejected the implied representation theory, at least where the creditor has not protected itself by credit checks or other easily verifiable information. *Manufacturer's Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082 (6th Cir.1988). In *Ward,* the Sixth Circuit also observed that exceptions to discharge are to be narrowly construed in favor of the debtor. 857 F.2d at 1086.

Obviously, First Deposit could not have relied upon Melinda Houfek's income and it had no legal recourse against James Houfek or his earnings. As to what recourse First Deposit may have expected upon nonpayment of the VISA account, the Court is uncertain. The information it received about the card holder points strongly to an assumption of the risk on First Deposit's part.

The foregoing notwithstanding, the facts of this proceeding raise two somewhat unusual aspects of the false pretenses inquiry. First, false pretenses, like fraud, should require an awareness by the perpetrator that she is misleading another. If

the only inquiry the Court must make is whether Melinda Houfek reasonably expected the future earnings of her husband to be sufficient to repay the $4,100 cash advance plus interest, then First Deposit must clearly fail. The Court believes that Melinda Houfek reasonably harbored such an expectation. If the Court is required, however, to more broadly consider whether Melinda Houfek knew or should have known at the time of the cash advance that the Houfeks were unable to meet the totality of their obligations, the inquiry is more difficult.

As evidenced by the bankruptcy schedules, by November 9, 1989, when the cash advance at issue was taken, the Houfeks had enormous financial problems. This cash advance pales when compared to their liquidated debts in excess of $1,000,000 and their potential guaranty obligations which could exceed $7,000,000. Assets, consisting primarily of liened real properties, were scheduled at only $364,000. Among the Houfeks' obligations are many other credit card debts with cash advance features. All of those appear to have been heavily drawn upon prior to February, 1990.

Despite all of the above, Melinda Houfek knew very little about the family's financial condition. This may have been due partially to her fairly serious illness during this period. It was also in part a conscious decision. Despite her educational level, she chose or was willing to permit her husband to handle all financial matters. She was used to that protection and remained largely unaware of household bills or the degree of her husband's business difficulties. Her bills had always somehow been paid and she seems to have presumed that state of affairs would continue. Since the larger and more serious obligations arose from her husband's business woes, her belief that matters would be straightened out once he had obtained a new position is not patently unreasonable. Her contribution to their joint expenses of a small line of credit drawn under those circumstances is not fraudulent to First Deposit. In other words, even if the analysis applies to the Houfeks' total financial situation and requires a "reasonableness" test, that objective test must take into account the peculiar characteristics and handicaps of the person to whom the test is applied. It is not just whether a reasonable person would have believed all of the family's obligations could be repaid; rather, the test is whether Melinda Houfek, with no past experience in handling the family finances and with no knowledge of the degree of her husband's business debts, knew or should have known that all of the family debts would not be repaid. The Court did not hear evidence that would support an affirmative answer to that inquiry.

After study of this circuit's holding in *Ward*, 857 F.2d at 1082, the Court finds that the debt from Melinda Houfek to First Deposit is not the type of obligation which should be excepted from discharge on grounds of false pretenses. First Deposit never relied upon James Houfek's income nor performed any credit checks of him. There was no debt between James Houfek and First Deposit. First Deposit knew Melinda Houfek had no independent income. Further, Melinda Houfek had handled her account responsibility with her prior cash advances. In hindsight, James Houfek should have realized earlier that his business was going to fail and Melinda Houfek should have accepted more responsibility for being informed about her own and her family's finances. That Melinda Houfek asked too few questions is not equivalent to false pretenses or fraud, however. Her serious illness further supports this conclusion. Accordingly, the Court finds that Melinda Houfek neither knew nor, given her circumstances, should have been expected to know that First Deposit's debt would not be repaid.

## V. CONCLUSION

Based upon the foregoing, the Court will enter judgment in favor of James and Melinda Houfek and against First Deposit. The request for an award of attorney fees to counsel for the defendants is denied.

IT IS SO ORDERED.