**In the Matter of David and Patti
LAURSEN, Debtors.**

**FCC NATIONAL BANK, d/b/a
First Card, Plaintiff,**

**v.**

**David and Patti LAURSEN, Defendants.**

**Bankruptcy No. BK96–40486.
Adversary No. A96–4065.**

United States Bankruptcy Court,
D. Nebraska.

July 15, 1997.

James L. Haszard, Lincoln, NE, for Plaintiff.

David Cygan, Lincoln, NE, for Defendants–Debtors.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This adversary proceeding was commenced by the plaintiff, FCC National Bank, d/b/a First Card, (the "Bank") on June 21, 1996. The Bank asserts that the obligation of the debtors, David and Patti Laursen, to the Bank is excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code. I conclude that the debt is dischargeable. The Bank has failed to establish that David Laursen has any liability on the credit card and the Bank has failed to prove that Patti Laursen engaged in any false pretenses, false representation or actual fraud.

In September of 1991, the Bank issued a Visa credit card to Patricia Hutchinson (now Patricia Laursen). On August 28, 1993, Patricia Hutchinson married David Laursen. On November 30, 1995, Ms. Laursen obtain a cash advance from the Visa account in the amount of $5,000.00. On December 6, 1995, Ms. Laursen took another cash advance in the amount of $4,000.00 from the account. In addition, Ms. Laursen made charges totaling $947.29 on the Visa account during the period from November 29, 1995 through December 23, 1995.

At the time the debtors filed for bankruptcy on March 22, 1996, they held 28 credit cards. Total credit card debt is in excess of $98,000.00, of which about $40,000.00 represents charges made in the 6 months immediately preceding bankruptcy. The Bank commenced this adversary proceeding asserting that the debt owed on the Visa account is non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code. Only one other credit card issuer commenced an adversary proceeding seeking to except its debt from discharge. That case involves charges made by the debtors in excess of the credit limit in June through August of 1995, on a GM credit card.

*Law*

The Bank has the burden of establishing by a preponderance of the evidence that the debt is excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code. This section provides in pertinent part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt– ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

Before a credit card debt can be found nondischargeable under section 523(a)(2)(A), a creditor must show actual fraud on the part of the debtor-namely that at the time the credit card charges were incurred, the debtor did not intend to pay them. *See In re Hiemer*, 184 B.R. 345 (Bankr.D.Neb.1995). Fraud must ordinarily be established by circumstantial evidence. *See In re Hoppel*, 203 B.R. 730, 734 (Bankr. D.Mont.1997). Factors to be considered in determining intent of the debtor include, without limitation:

1. The length of time between making the charges and the filing of bankruptcy;

2. Whether an attorney has been consulted concerning the filing of bankruptcy before making the charges;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether the debtor was employed when the charges were made;

9. The debtor's prospects for employment;

10. The financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*See Hiemer* at 347.

The establishment of common law, actual fraud, through the consideration of these factors is consistent with the Supreme Court's recent decision in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

## Discussion

### David Laursen

The first issue is whether David Laursen is liable on the credit card debt. This question was raised by the court because David Laursen did not apply for the card, did not make charges on the card, and is not an authorized user of the card. I directed counsel for the parties to address the issue of Mr. Laursen's liability to the Bank in written briefs to the court. However, the Bank has not advanced any viable theory from which I conclude that David Laursen is liable for the debt owed to the Bank. Mr. Laursen is sophisticated in financial affairs. He had complete knowledge concerning the debtors' credit card liabilities. He told Ms. Laursen which credit cards to use to pay various debts. He directed her to take cash advances from the various credit card accounts and specified how the cash advances were to be used. He did this with the knowledge that he and his wife did not have the ability to repay their credit card debts. However, these general facts alone, do not render Mr. Laursen liable on the specific credit card charges that are before the court in this adversary proceeding.

■ First, I conclude that Mr. Laursen is not contractually liable for the credit card debt. The credit card is in the name of Patti Laursen, and she made all the charges and took the cash advances on the account. Although, Mr. Laursen directed Ms. Laursen to make the charges and cash withdrawals, he did not sign the credit card agreement and he did not sign any of the credit card charge invoices. There is simply no privity of contract between Mr. Laursen and the Bank and he has no contractual liability to

the Bank. *See In re Houfek*, 126 B.R. 530 (Bankr.S.D.Ohio 1991).

The Bank did not offer evidence from which I conclude that Ms. Laursen acted as an agent of Mr. Laursen in obtaining the credit card or in incurring the debt. The Bank has not established that Ms. Laursen had actual, implied, or apparent authority to act as Mr. Laursen's agent in obtaining the card or in incurring charges on the credit card account. Because the Bank has not demonstrated a principal-agency relationship, contractual liability of Mr. Laursen cannot be predicated upon the activities of Ms. Laursen. Courts have been hesitant to find contractual liability on the part of individuals other than the person who applies for and receives the credit card. Individuals that the cardholder designate as having authority to make purchases on a credit card are often referred to as "authorized users" of a credit card. Decisional law indicates that even authorized users are not regarded as contractually liable for charges they make on the account. *See Sears Roebuck & Co. v. Ragucci*, 203 N.J.Super. 82, 495 A.2d 923 (1985), *Cleveland Trust Co. v. Snyder*, 55 Ohio App.2d 168, 380 N.E.2d 354 (1978).

■ Second, I conclude that David Laursen is not liable for the debt on a quasi-contract or a quantum meruit theory. *See Ragucci* at 926 (authorized user of a credit card may be obligated to pay for their *own* charges on a quasi-contract or quantum meruit theory). Because Mr. Laursen did not make any charges as an authorized user, or otherwise, the quasi-contract theory is of questionable applicability on the facts of this case. Furthermore, the elements for quantum meruit are not satisfied. The essential elements of quantum meruit are: (1) valuable services rendered or materials furnished, (2) to the person sought to be charged, (3) which were accepted and used by such person, and (4) under circumstances as such person sought to be charged had reasonable notice that the plaintiff was expected to be paid by the person sought to be charged. *See Black's Law Dictionary* 1119 (5th ed.1979). If Mr. Laursen had directed Ms. Laursen to make specific charges or obtain cash advances to be used for his direct benefit, he

may have liability under a quantum meruit theory. For example, if the Bank had shown that he directed Ms. Laursen to obtain cash advances and use the funds for his direct benefit by purchasing inventory for his business, then he would arguably be liable for repayment of the cash advance, and I would have no difficulty finding that Mr. Laursen's quasi-contractual obligation arose from actual fraud. However, the Bank has presented no evidence from which I conclude that the specific cash advances or charges sought to be excepted from discharge, were made to directly benefit Mr. Laursen. The Bank has made assertions that the cash advances generally benefitted the debtors, however, the Bank has not demonstrated that the cash advances and charges incurred provided a direct benefit to Mr. Laursen. Therefore, the Bank has failed to establish a factual basis for finding David Laursen liable upon a quantum merit or quasi-contract theory.

■ Finally, I conclude that there has been an absolute failure on the part of the Bank to demonstrate that it justifiably relied on any representation made by Mr. Laursen. Under *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the United States Supreme Court held that justifiable reliance on a representation by the debtor is a necessary element to establish fraud under section 523(a)(2)(A) of the Bankruptcy Code. The Bank has not even presented evidence from which I conclude that it relied in fact on any representation made by Mr. Laursen. Furthermore, there is no evidence that Mr. Laursen ever made an actual representation, and, on the facts of this case, it would be error to imply a representation to pay by Mr. Laursen to the Bank.

*Patti Laursen*

■ Ms. Laursen did not testify at the trial and there is little evidence relevant to whether she intended to repay the cash advances or charges made to her credit card. The Bank failed to offer evidence of Ms. Laursen's financial sophistication, her knowledge of her debt situation, or her knowledge or expectations regarding Mr. Laursen's present and future income. Ms. Laursen did not consult an attorney prior to incurring the credit card debt. She was employed at the time the debt was incurred. The cash advances were used to make payments on other credit cards as she had done in the past, and the advances were not used to purchase luxury items.

The Bank has failed to meet its burden of proof of establishing that Ms. Laursen did not intend to pay for the charges or the cash advances.

In addition, even if I concluded that Ms. Laursen fraudulently incurred the debt, the Bank has not proved that it justifiably relied on any representation she may have made, either at the time she applied for the credit card or at the time the cash advances or charges were made.

A separate judgment will be entered in favor of the defendants-debtors.