In re FARMLAND INDUSTRIES,
INC., et al., Debtors.

No. 02–50557–JWV.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 16, 2004.

Cassandra L. Writz, Cynthia Dillard Parres, Robert M. Thompson, Bryan, Cave, Gene A. DeLeve, Berman, Deleve, Kuchan & Chapman, Laurence M. Frazen, Mark G. Stingley, Michelle M. Masoner, Staci O. Schorgl, Tammee E. McVey, William Jeffrey Maloney, Bryan Cave LLP, Michael D. Hockley, Spencer Fane Britt & Browne, Kansas City, MO, Thomas R. Graham, King & Spalding LLP, Washington, DC, for Debtors.

## MEMORANDUM OPINION

JERRY W. VENTERS, Chief Judge.

Farmland Industries, Inc., ("Debtor"), and the Official Committee of Bondholders filed a joint motion for summary judgment seeking to disallow PJ Services LLC's ("PJ Services") January 7, 2003 proof of claim in the amount of $7,250,000.[1] PJ Services asserted that the amount owed to it arose out of the Debtor's breach of an alleged contract to provide employment services. On December 1, 2003, PJ Services filed a motion to amend its claim reducing the dollar amount to $4,501,330. The Court conducted a hearing on the motion for summary judgment on December 2, 2003, in Kansas City, Missouri, at which time the Court took the matter under advisement. On December 16, 2003, the Court held a hearing on PJ Services's motion to amend its claim and took that matter under advisement along with the motion for summary judgment. After reviewing the motions, the responses and the parties' arguments, the Court is prepared to rule that a legal basis exists upon which PJ Services may assert a claim against the Debtor and that PJ Services will be allowed to amend its proof of claim.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Rule 7056, Fed. R. Bankr.P. 7056; *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 1611, 26 L.Ed.2d 142 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita*

---

1. The motion originally included two related claims of Petrus Botes and Joyce Coetzee, but those parties subsequently withdrew their claims. (Document No. 6900). Accordingly, the only claim before the Court is that of PJ Services.

*Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356 89 L.Ed.2d 538 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2514.

## II. BACKGROUND

PJ Services stated that it met with the Debtor in the fall of 2000 and entered into an agreement whereby PJ Services would provide South African workers for the Debtor's agricultural business beginning in March 2001. In the winter and spring of 2001, PJ Services contacted a South African employment agency, Nienaber Consultants, to make arrangements for 200 South Africans to make the journey across the Atlantic to work for the Debtor. Unfortunately, complications arose regarding immigration and on March 12, 2001, Jim Hunt, the manager of the Debtor's placement services, advised Peter Botes, a representative of PJ Services, that the Debtor's immigration attorney was timely filing everything on behalf of the South African workers, but that the Debtor was experiencing delay with the various state labor departments. Hunt anticipated that the necessary paperwork would be approved by April 1, 2001, and he counseled that the South African workers should be patient. Apparently all the required paperwork was completed with the State of Kansas in April 2001, and ten South Africans came to the United States. According to PJ Services, the Debtor interviewed those candidates and placed them in agricultural jobs paying between $8.00 and $9.00 per hour. More workers did not immediately undertake the journey because the Debtor was evidently having continuing difficulty complying with state and federal regulations. On April 23, 2001, Hunt wrote Botes that the Debtor was still diligently working on obtaining the necessary state permits. Hunt also related that the Debtor felt "confident" that the jobs would still be available, and that the Debtor wanted to work with Botes and his South African candidates. On May 8, 2001, Hunt issued an open letter requesting that Botes act as an agent for some of the South African workers, and requested that Botes facilitate the work permits, immigration papers, and other documentation to "insure an efficient flow of information." In June 2001, according to PJ Services, the Debtor interviewed an additional thirty-five South African workers who came to the United States, but those workers were not placed in jobs. Instead, PJ Services housed them at a motel in Salina, Kansas. The Immigration and Naturalization Service subsequently raided the offices of PJ Services and confiscated all its documentation.

On January 7, 2003, PJ Services filed its proof of claim in the amount of $7,250,000 based on an alleged breach of a written contract to provide employment services. The Debtor objected to that proof of claim, arguing that it never entered into a contract with PJ Services and that PJ Services failed to provide any evidence of damages. In fact, the original proof of claim stated that the Debtor contracted for 204 South African workers and that the Debtor agreed to pay PJ Services "$1,000.00 for each employee for each year

over a three year period;"[2] thus, PJ Services claimed damages in the amount of $612,000.00. Additionally, because the Debtor allegedly guaranteed that each employee would earn "approximately $30,000.00 per year, over the three year contract term," PJ Services claimed an additional $6,500,000 in potential liability from the workers in South Africa who quit their jobs there and sold their belongings based on the Debtor's alleged representations that they would have jobs in the United States.

The original proof of claim filed by PJ Services was based on an alleged written contract with the Debtor. Then contending that the INS had confiscated its written contract with the Debtors, PJ Services stated in its proposed amended proof of claim that the agreement was an oral contract. Furthermore, PJ Services now submits that the alleged oral agreement provided that the Debtor would pay PJ Services $1,000.00 for each of 250 workers. PJ Services included $1,330.00 in expenses it incurred to house the South African workers in Salina, Kansas, and reduced the amount of its potential exposure in the anticipated South African lawsuits to $4,250,000.

## III. DISCUSSION

Because the Debtor filed its motion for summary judgment on the original proof of claim—before PJ Services filed its motion to amend—the Court will address whether the Debtor is entitled to summary judgment based on the original proof of claim before determining whether to allow the amended claim. As stated herein, the Court finds that PJ Services has a valid claim against the Debtor which precludes the granting of summary judgment to to-

tally disallow its claim. The Court will also allow PJ Services to amend its proof of claim.

### A. The Debtor's Objections to PJ Services's Original Proof of Claim

#### 1. Burden of Proof

A proof of claim is entitled to a *prima facie* presumption of validity. Fed. R. Bankr.P. 3001(f). Even upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991). *See also In re Interco Inc.*, 211 B.R. 667, 677 (Bankr.E.D.Mo.1997) (same). A party objecting to a proof of claim has the burden of going forward to "meet, overcome, or, at minimum, equalize the valid claim." *FDIC v. Union Entities (In re Be–Mac Transport Co.)*, 83 F.3d 1020, 1025 (8th Cir.1996) (quoting *In re Gridley*, 149 B.R. 128, 132 (Bankr.D.S.D.1992)). Once the burden of overcoming the *prima facie* validity of the proof of claim is met, the ultimate burden of persuasion always rests on the claimant by a preponderance of the evidence. *Id.*

#### 2. Failure to Attach Writing Evidencing the Basis for the Proof of Claim

The Debtor objected to PJ Services's original proof of claim on the grounds that PJ Services had failed to attach the written contract forming the basis of its claim. Thus, the Debtor objected to the proof of claim on its face, and for the purposes of this issue only, the Court will examine whether PJ Services's claim facially com-

---

**2.** In PJ Services's response to the Debtor's objection, it stated: "The agreement called for Claimants to provide approximately 200 workers per year for three (3) years." (Document 4847, ¶ 4).

plies with Fed. R. Bankr.P. 3001(c), and will not address the underlying merits.

■ Pursuant to Rule 3001(c), "[w]hen a claim ... is based on a writing, the original or a duplicate shall be filed with the proof of claim." Here, PJ Services stated that the actual contract between the parties was being retained by the INS, but it attached a series of letters and affidavits to verify the terms and conditions of the agreement. Thus, even though it failed to attach a copy of the written agreement, PJ Services complied with the second sentence of Rule 3001(c), which states: "If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Here, PJ Services represented that the written agreement was "lost" inasmuch as it was being retained by the INS. Accordingly, the failure to attach the written agreement to its proof of claim was not fatal.

### 3. Statute of Frauds

The Debtor next asserts that the alleged contract between itself and PJ Services is unenforceable because it does not comply with the Statute of Frauds. Because PJ Services admitted after filing its proof of claim that the alleged agreement was oral and not written, the Court will not belabor an analysis of whether the written correspondence between the parties is sufficient to constitute a writing necessary to satisfy the Statute of Frauds.

■ Section 432.010 of the Missouri Revised Statutes states that "[n]o action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall

be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized." In PJ Services's response to the Debtor's objection to its proof of claim, PJ Services stated that the alleged "agreement called for Claimants to provide approximately 200 workers per year for three years." (Document No. 4847, ¶ 4). Corroborating that statement, PJ Services's original proof of claim stated that it was damaged in excess of $600,000.00 by the Debtor's breach of the alleged contract. Because the express terms of the alleged contract provided that performance could not be completed within one year, the contract fell within the Statute of Frauds and is unenforceable absent a writing or some exception to the Statute.[3]

### 4. *Quantum Meruit*

PJ Services contends that even if the alleged contract fell within the Statute of Frauds, it is nonetheless entitled to damages in *quantum meruit.*

■ *Quantum meruit* damages are awarded in equity under the theory that no one who benefits from the labor and materials of another should be unjustly enriched thereby, and the law implies a promise to pay a reasonable amount even in the absence of a specific contract. *Black's Law Dictionary* 1243 (6th ed.1990). Because *quantum meruit* is an equitable doctrine based on an implied contract, its application differs from that of restitution in dealing with an alleged contract that is unenforceable based on the Statute of Frauds. Namely, to receive restitution, a party must prove the existence of a contract that would be valid but for the fact that the contract is unenforceable by application of the Statute. *Restatement (Sec-*

---

**3.** Based on the evidence presented, the Court finds no basis for PJ Services's contention that the oral agreement could be performed within one year.

*ond) Contracts* § 375. By contrast, to receive damages in *quantum meruit,* a party must only show that: (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which were accepted and used by such person, and (4) under circumstances that would give reasonable notice that the provider expected payment. *FCC Nat'l Bank v. Laursen (In re Laursen),* 214 B.R. 378, 381 (Bankr.D.Neb.1997). *See also Stevenson v. Stevenson Associates, Inc. (In re Stevenson Associates, Inc.),* 777 F.2d 415, 421 (8th Cir.1985) ("Recovery in quantum meruit may be obtained where a benefit is conferred and knowingly accepted under such circumstances that would make it unjust to permit its retention without payment."); *Browning–Ferris Industries of St. Louis, Inc. v. Landmark Systems, Inc.,* 822 S.W.2d 569, 572 (Mo.App.1992) (same).[4]

■■■■ In this case, Jim Hunt, manager of placement services for the Debtor, wrote to PJ Services on April 23, 2001, stating: "We want to work with you and your South African candidates." On May 8, 2001, Jim Hunt wrote: "We request that ... PJ Services ... act as our agent for some of the South African candidates that we are currently working with." At the hearing, PJ Services represented to the Court that it had in fact procured ten South African workers for the Debtor in April 2001, who were placed by the Debtor; procured an additional thirty-five workers in June 2001 that were interviewed by the Debtor, but not placed, and who were boarded in Salina, Kansas; and had an additional 250 workers ready to move to the United States from South Africa. Accordingly, PJ Services demonstrated that it rendered valuable services to the Debtor by procuring human capital for the Debtor's benefit, the Debtor accepted the benefits of PJ Services's work, and the Debtor accepted such work under such terms that a reasonable person would have notice that PJ Services expected to be paid. Accordingly, the Court finds that PJ Services might be entitled to damages in *quantum meruit,* and on that basis will deny the Debtor's motion for summary judgment.[5]

**4.** The Debtor argues that a contract must exist before a court can award damages in *quantum meruit.* To the contrary, by definition recovery in *quantum meruit* is based on an "implied contract" and when an express contract exists, there is no need for the application of *quantum meruit. See, e.g., Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 325 (Mo.1979) ("A promise to pay the reasonable value of an attorney's services is implied where there is no express contract, if the services are accepted by the client or rendered at his request, and recovery may be had in quantum meruit, to the extent of the reasonable value of the lawyer's services to his client.").

**5.** Because the Court finds that PJ Services might be entitled to damages in *quantum meruit,* the Court cannot grant the Debtor's motion for summary judgment and its request to disallow PJ Services's claim. The Court makes no findings in ruling on this motion regarding the amount of PJ Services's damages, or its allegations of part performance sufficient enough to satisfy the Statute of Frauds. The Court notes, however, that even if PJ Services can prove the existence of a contract at a later hearing, it would not be likely to recover any greater damages in contract than it could under an implied contract theory. This is due to the fact that the law generally requires full performance by one party before a contract is removed from the Statute of Frauds. *Restatement (Second) Contracts* § 130 cmt. e. *See also Blue Valley Creamery Co. v. Consolidated Products Co.,* 81 F.2d 182 (8th Cir.1936), *cert. denied,* 305 U.S. 629, 59 S.Ct. 93, 83 L.Ed. 403 (1938). Partial performance generally only gives the distressed party the right to restitution. *Restatement (Second) Contracts* § 130 cmt. e. The amount of PJ Services's claim could also be limited by the doctrine of agreed equivalents. § 240.

### B. Amendment to Claim

On January 7, 2003, PJ Services filed its proof of claim in the amount of $7,250,000. The claims bar date in this case was January 10, 2003. Nearly eleven months later, after the Debtor objected to its original proof of claim, PJ Services filed a motion to amend so that it could describe its claim against the Debtor with greater particularity, reduce the amount of the claim to $4,501,330, and provide adequate proof regarding the amount of its damages.

The decision to allow an amendment to a claim is within the sound discretion of the bankruptcy court. *In re Wrenn Ins. Agency*, 178 B.R. 792, 798 (Bankr.W.D.Mo.1995); *In re Fischer*, 109 B.R. 384, 387 (Bankr.E.D.Mo.1989), *aff'd* 131 B.R. 137 (E.D.Mo.1990). Once the initial observance of the time limitations for filing a proof of claim is preserved, the courts should be liberal in allowing creditors to amend their proofs of claim, and such amendments may be made at any stage of the proceedings as required by the bankruptcy court's equitable mandate. *In re Donovan Wire & Iron Co.*, 822 F.2d 38, 39–40 (8th Cir.1987); *Jensen v. Uhlenhopp (In re Uhlenhopp)*, 508 F.2d 412, 414 (8th Cir.1975); *In re Faulkner*, 161 F. 900, 903 (8th Cir.1908). As long as the original proof of claim is timely filed, and discloses facts "showing an assertion of a claim against the estate and an intention by the claimant to share in its assets," a basis exists for the court to allow a proposed amendment. *Tarbell v. Crex Carpet Co.*, 90 F.2d 683, 685–86 (8th Cir.1937). Thus, amendments are generally allowed when "the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Fischer*, 109 B.R. at 387 (quoting *United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir.1985)).

In this case, PJ Services timely filed a proof of claim in the amount of $7,250,000. The proposed amendment does not impermissibly seek to change the nature of the claim from unsecured to secured, and does not seek to assert a new claim under the guise of an amendment. Rather than increasing the amount of the claim, PJ Services reduced the claim to $4,501,330, and seeks to provide additional documentation. Allowing an amendment in this case does not result in any prejudice to the estate, and because the total amount of the claim is reduced, an amendment does not adversely affect the Debtor's confirmed plan or other creditors of the estate. Any change in the contractual based theory underlying the amount of PJ Services claim—i.e., breach of a written contract to *quantum meruit*—is not a determinative factor because the basis for PJ Services's claim is, and always has been, the core of operative facts surrounding its dealings with the Debtor and the South African work force. Having alleged that monies were due to it by the Debtor arising out of those operative facts, the Debtor cannot be surprised by the assertion of a different legal theory necessary to support the amount presumptively owed. Accordingly, the Court will allow PJ Services to amend the proof of claim as presented in its motion.

### IV. CONCLUSION

The Court will deny the Debtor's motion for summary judgment to disallow PJ Services proof of claim, finding that PJ Services has stated a claim for damages in *quantum meruit*. Because the Debtor is not entitled to the relief requested in its motion for summary judgment on that basis alone, the Court need not discuss PJ Services's theories of part performance or

negligent misrepresentation—issues which are retained for hearing on the merits. In an effort to bring finality to the number of theories PJ Services may assert to support its claim, and the number of objections the Debtor may raise, PJ Services may wish to consider filing an adversary proceeding against the Debtor. Furthermore, the Court will allow PJ Services to file an amended proof of claim.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 9014(c) and 7056. A separate order shall be entered pursuant to Fed. R. Bankr.P. 9021.