203 N.J. Super. 82 (1985)
495 A.2d 923
SEARS ROEBUCK & CO., PLAINTIFF,
v.
ERNEST RAGUCCI & JANET RAGUCCI, DEFENDANTS.
SEARS ROEBUCK & CO., PLAINTIFF,
v.
CHRISTINE LADAY, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Essex County.
Decided February 24, 1985.
*85 Lawrence J. McDermott, Jr., for plaintiff (Pressler & Pressler, attorneys).
Albert Bowden, legal intern per R. 1:21-3(c), for defendant Janet Ragucci (Essex Newark Legal Services, attorneys).
Paul Alongi for defendant Christine Laday.
ROSEMARY HIGGINS CASS, J.S.C.
The question before this court, raised by summary judgment motions in two similar cases and not previously decided in this jurisdiction, is whether an authorized buyer on another's credit card account can be held liable for purchases made on the account.[1] Sears Roebuck & Co., a national retail store chain, seeks summary judgment on unpaid purchases against defendants Janet Ragucci and Christine Laday, who were "authorized buyers" on their respective spouses' Sears credit card accounts.
To obtain a Sears credit card account a person must fill out a standard application form. The applicant obligates himself to pay for all purchases made on his account. If approved, the applicant is issued a credit card to make purchases at any Sears store. The card designates the person who is issued the account and his account number. The application also permits the cardholder to designate family members, such as a spouse, to be authorized buyers, who can make purchases on the account. However, the application does not state that the authorized buyer is directly liable for his purchases or any other purchases made on the account. In addition, the authorized buyer is not required to sign the application, making him liable for purchases, his own or others, made on the account.
In the one case, Sears sues Christine Laday for six separate purchases she made with her husband's Sears account between *86 August 19, 1982 and May 31, 1983, totaling $614.72. Her husband, James, had obtained the account in his name prior to their marriage. After their marriage, Mrs. Laday was added as an authorized buyer on the account. James Laday died on July 30, 1983. Mrs. Laday contends that her husband's estate is liable for the balance due on the account because he agreed to pay for all credit purchases made on his account and she made no agreement obligating her to pay for such purchases.
In the other case, Sears sued Ernest and Janet Ragucci for purchases totaling $2,141.50 made on Ernest's account. Sears obtained a default judgment against Mr. Ragucci and now seeks summary judgment against Mrs. Ragucci. On February 1, 1978, Mr. Ragucci was issued a Sears account in his name, with Mrs. Ragucci listed as an authorized buyer. Between October 10, 1979 and December 3, 1979, Mrs. Ragucci made eight separate purchases totaling $1,184.89. On May 9, 1980, the Raguccis were divorced and a settlement agreement therein obligated Mr. Ragucci to pay for all Sears purchases. Mrs. Ragucci contends her husband alone is liable to Sears pursuant to the divorce decree and his agreement with Sears. She, too, contends that she never agreed to pay for any purchases made on her husband's account.
Retail charge accounts come within the purview of the Retail Installment Sales Act of 1960 by amendments in 1971. N.J.S.A. 17:16C-1 et seq.; The Singer Co. v. Gardner, 65 N.J. 403 (1974). Pursuant to N.J.S.A. 17:16C-34.1 a person authorized by the retail buyer to make purchases can activate the retail buyer's charge account. The retail buyer is a person who agrees to buy goods or services from a retail seller pursuant to a retail charge account. N.J.S.A. 17:16C-1(d). By a fair interpretation of these provisions the retail buyer and his authorized buyer have a principal and agent relationship. A known agent acting within the scope of his authority for a disclosed principal is not personally liable unless he expressly agrees to perform *87 his principal's obligation. Stopford v. Boonton Molding Co., 56 N.J. 169 (1970).
The Sears credit card accounts in dispute are retail charge accounts. The holder of the account, or retail buyer, agrees to pay for all purchases made on his account. A sales slip, which must be signed by the cardholder or authorized buyer for purchases made on the credit account, states the cardholder agrees to pay for all charges made by him or his authorized buyers. Both Mrs. Laday and Mrs. Ragucci, when signing the sales slip for the goods purchased on their husbands' accounts, acted as known agents for disclosed principals. Neither of them made an express agreement to pay their husband's obligation.
There are no New Jersey cases involving a creditor's attempt to impute liability to an authorized buyer of a credit card account. However, research has revealed one reported case in another jurisdiction, which is directly on point.
In Cleveland Trust Co. v. Snyder, 55 Ohio App.2d 168, 380 N.E.2d 354 (Ohio Ct. App. 1978), the suit involved unpaid advances to the credit card account of the defendant's former husband. As in the Ragucci case, a default judgment was entered against the husband, but the plaintiff continued to litigate its claim against his wife. Id., 380 N.E.2d at 357. The ex-husband was issued a credit card account with the plaintiff, Cleveland Trust Co.. As cardholder of the account, he was authorized to receive cash advances to his checking account with the bank and purchase goods and services on credit. The defendant was a holder of a related card, which permitted her to sign for cash advances to her husband's checking account and purchase goods and services with his credit card. The credit account was issued to the husband and he agreed to pay for all purchases on his credit card and cash advances to his account, including those made by his wife as holder of a related card. The defendant signed no agreement making her liable if her husband's account was unpaid. Furthermore, burdens and *88 privileges given to the cardholder were denied to the holder of a related card. Only the cardholder received an account statement, which he alone could challenge, and only the cardholder was notified of any change to the credit agreement. For these reasons, the court held that the defendant's position as holder of a related card did not make her a "cardholder" as contemplated by the credit card agreement and liable for unpaid advances to her ex-husband's account. Id., 380 N.E.2d at 360.
Although this court is not bound by the decision in Cleveland Trust Co., the rationale articulated therein is persuasive in the present case. The credit card account in Cleveland Trust is similar to the ones at issue here. The Sear's credit card accounts were issued solely to the defendants' husbands and in each case the husband agreed to be responsible for all purchases made on the account, including those made by authorized buyers. The classification of "authorized buyer" is similar to that of the "recipient" of a related card classification in Cleveland Trust. Both classifications allow access to the services provided to the actual cardholder. At most, both women were agents acting on behalf of disclosed principals. Consequently, I hold that an "authorized buyer" is not a "retail buyer" within the intendment of N.J.S.A. 17:16C-1(d) and thus neither woman is liable to Sears based on a direct contractual obligation for the unpaid balance of her husband's Sears credit card account.
Sears also seeks recovery against the two women defendants on alternate theories of quasi-contract and/or spousal liability for necessary expenses of the family.
Quasi-contracts are created by law without regard to whether there was an agreement to pay for goods or services rendered. Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App.Div. 1966). In fact, a contract is sometimes imposed contrary to a clear expression of intent. Bergen Cty. Sewer Auth. v. Bor. of Bergenfield, 142 N.J. Super. 438, 456 (Law Div. 1976). A contract is created because it is unjust for a *89 person to receive and keep a benefit without paying for its value to the party entitled thereto. Flemming v. Ronson Corp., 107 N.J. Super. 311, 316 (Law Div. 1969). Thus, a plaintiff must prove that it is unjust for the defendant to receive and retain a benefit from the plaintiff without payment. Callano v. Oakwood Park Homes Corp., supra, 91 N.J. Super. at 109.
Sears has shown that Laday and Ragucci received goods from one of its stores by using their husbands' Sears credit cards. Laday made six purchases totalling $614.72. Ragucci made eight purchases totalling $1,184.89. However, absent proof of the purpose of the purchases and to whose benefit they inured, Sears cannot prevail on this theory.
In the Ragucci case, Janet Ragucci in her certification dated April 24, 1984 admitted that she purchased various necessities such as clothing, household items and children's things because her husband was not supporting her. To the extent that these items inured to her own benefit or that of her children, for whom she has an obligation of support equal to her husband's, she may be obligated on a theory of quasi-contract. C.v.R., 169 N.J. Super. 168, 171 (Ch.Div. 1979).
In the Laday case, no proof has been offered of the items purchased and to whose benefit they inured.
Thus both cases contain a genuine issue of fact as to the type of goods purchased and who benefitted from their receipt.
Case law now provides that both spouses are liable for necessary family expenses incurred by either spouse. Jersey Shore v. Estate of Baum, 84 N.J. 137, 141 (1980). However, it applies only to debts incurred after July 2, 1980 (the date of the Jersey Shore decision). Id. at 137. Prior to this decision, a wife, in purchasing necessaries, was considered at common law to be acting as an agent for a disclosed principal and she incurred no personal liability on the contract of purchase unless the credit was extended to her individually or she expressly contracted to be liable. Dunham & Co. v. Dzurinko, 125 *90 N.J. Super. 296, 299 (App.Div. 1973). See also Smedley v. Sweeten, 11 N.J. Super. 39 (App.Div. 1950).
Whether spousal liability can be imputed to the defendants is another genuine issue of material fact. The last Ragucci purchase subject to this suit was made on December 3, 1979, before the decision in Jersey Shore and at a time when the defendant's spouse was not supporting his family. To hold Mrs. Ragucci liable on a necessaries theory, plaintiff Sears must establish that she and her husband separated by mutual consent without a maintenance agreement for her support since she had means of her own support or that the separation was due to misconduct by the defendant wife. Smedley v. Sweeten, supra., 11 N.J. Super. at 43. While the Laday purchases were all made after July 2, 1980, the type and nature of the purchases must be determined.
Ragucci's contention that under any circumstances she is not liable because a divorce decree obligates her ex-husband to pay for her Sears credit purchases is without merit. Sears was not a party to the divorce proceeding and as a third party did not waive any claims it might have against her. See N.J.S.A. 2A:55-1 et seq. Thus, the settlement agreement is not a defense to Janet Ragucci's liability under either a quasi-contractual or necessaries theory. Her remedy is by way of indemnification against her ex-husband. Johnson v. Johnson, 92 N.J. Super. 457 (App.Div. 1966). See Jones v. Gabrielan, 52 N.J. Super. 563, 573 (App.Div. 1958).
The plaintiff may not recover against either defendant on a theory of direct contractual liability. Whether it may recover based on implied contract or a theory of necessaries must await a determination at trial as to the circumstances of the various purchases.
Summary judgments are denied.
NOTES
[1] After oral argument in the two cases, plaintiff conceded there was no direct contractual liability incurred by the two "authorized buyers". Nevertheless, the question is one frequently in dispute and I have therefore reduced the opinion to writing.