DCB CONSTRUCTION CO., INC., Petitioner,

v.

The CENTRAL CITY DEVELOPMENT CO., Respondent.

No. 96SC672.

Supreme Court of Colorado, En Banc.

Sept. 14, 1998.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Gehler & Merrigan, Thomas E. Merrigan, Commerce City, for Petitioner.

Holley, Albertson & Polk, P.C., George Alan Holley, Thomas A. Walsh, Golden, for Respondent.

Minor & Brown, P.C., John A. Logan, Denver, for Amicus Curiae Denver Metro Building Owners and Managers Association and Institute of Real Estate Management Northern Colorado Chapter 17.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., David T. Brennan, Amy J. Griffin, Denver, for Amicus Curiae Associated Builders and Contractors, Inc.

Stettner, Miller and Cohn, P.C., Robert R. Miller, Denver, for Amicus Curiae Associated General Contractors of Colorado.

Woodrow & Gruskin, Professional Corporation, Mark D. Gruskin, Denise LaBier Pilkington, Denver, for Amicus Curiae The American Subcontractors Association.

KOURLIS, Justice.

We granted certiorari to review the court of appeals' ruling in *DCB Construction Co., Inc. v. Central City Development Co.,* 940 P.2d 958 (Colo.App.1996), in order to address the question of whether a landlord is liable, under a theory of unjust enrichment, for tenant finish construction costs when the tenant defaults. In *DCB Construction,* the court of appeals held that a contractor that constructed improvements to leased premises pursuant to a contract with the tenant of those premises could not recover against the owner of the premises under a theory of unjust enrichment. We agree. We now hold that for the enrichment to the landlord to be unjust and therefore actionable, the contractor must show some improper, deceitful, or misleading conduct by the landlord. This case presents no such facts, and we therefore affirm the judgment of the court of appeals.

I.

Central City Development Company (CCDC) is the owner of an historic commercial building in Central City, Colorado. In January of 1992, CCDC entered into a five-year lease [1] on the building with Santa Barbara Capital, Inc. (Tenant). The lease called for roughly $30,000 per month in rent, for total expected payments of $1,750,000 over the five-year term. The lease permitted Tenant to use the premises only for limited-stakes gambling. The lease further provided that Tenant would not make alterations or additions that would impair the historic character of the site, and that CCDC had the right to approve all plans and specifications for remodeling. CCDC agreed that such approval would not be unreasonably withheld. Tenant originally hired a contractor in January of 1992, but by June of that year Tenant terminated the first contractor and entered into a contract with DCB Construction Co., Inc. (DCB). This contract called for significant work on the interior of the building, and CCDC approved the plans.

The lease between CCDC and Tenant provided that Tenant would pay all costs associated with remodeling regardless of the amount, and would indemnify CCDC against any liens or claims arising out of the work. The Tenant was to post a notice on the premises informing architects, draftsmen, planners, contractors or subcontractors, and suppliers of labor or material and equipment that the property would not be subject to a lien for the improvements. The Tenant did in fact post the notice, which stated in pertinent part:

> [CCDC] shall *not* be liable for any erection, construction, alteration, removal, addition, repair, or other improvement, and the owner's interest in the above described property shall *not* be subject to a lien for any erection, construction, alteration, removal, addition, repair, or other improvement to [the leased premises].

(Emphasis in original.) DCB does not dispute that it was aware of the notice, and it

---

**1.** The parties actually signed two five-year leases, one covering the first floor and another covering the second floor. The pertinent terms of the two leases are identical, and for simplicity of reference, we refer herein to these leases as one lease.

made no attempt to place a lien on the premises.[2]

Under its contract with Tenant, DCB completed significant improvements to the interior of the building, including constructing a foundation retaining wall and a steel frame with flooring. DCB installed carpentry framing, roof joists, stairs, a fire sprinkler system, electrical wiring, plumbing, heating, ventilation, and air conditioning. A representative of CCDC was present on the premises fairly regularly during the construction; however, CCDC did not communicate with or direct DCB regarding the work. In November of 1992, DCB stopped work on the building because of Tenant's failure to pay. In all, DCB submitted bills to Tenant totaling $371,245, of which amount Tenant paid $76,515.

Tenant also defaulted under its lease agreement, and stopped paying rent in December of 1992. Tenant paid a total of $427,500 to CCDC during the term of the lease ($50,000 of which was later dispersed to subcontractors). After Tenant vacated the premises, CCDC placed a "For Rent" sign on the building, but, as of the date of the trial, had received no inquiries about purchasing or leasing the building.

In the wake of these defaults, the subcontractors and DCB filed claims against Tenant and CCDC, and CCDC pursued Tenant for eviction. The three cases were consolidated in the trial court. CCDC obtained an eviction order against Tenant dated February 12, 1993. DCB obtained a judgment against Tenant for $332,026.35, but Tenant was insolvent. The various claims of the subcontractors were dismissed after a settlement was reached.

The only remaining claims were DCB's claim against CCDC for unjust enrichment, and CCDC's counterclaims against DCB for negligent misrepresentation and fraudulent misrepresentation. DCB claimed that principles of unjust enrichment required CCDC to compensate DCB, because CCDC had received the benefit of the property improvement. CCDC, in turn, claimed that DCB had either negligently or fraudulently misrepresented the estimated amount necessary to complete its work on the premises.

After a bench trial, the trial court ruled against CCDC on its misrepresentation claims, finding a "total failure of proof of fraudulent conduct or negligent misrepresentation" by DCB. The court then ruled in favor of DCB on its claim of unjust enrichment. The court entered judgment against CCDC in the amount Tenant owed DCB plus interest and costs for a total of $333,191.[3]

CCDC appealed both of the trial court's rulings. The court of appeals affirmed the trial court's ruling that DCB had not made a negligent or fraudulent misrepresentation to CCDC, but reversed the judgment for unjust enrichment. The court of appeals held that under the facts of this case, where there was no mistake, fraud, duress, or other improper conduct by CCDC, any enrichment of CCDC by DCB was not unjust.[4] We affirm.

## II.

▮ DCB's claim of unjust enrichment is a legal claim in quasi-contract for money damages based upon principles of restitution. *See* 1 George E. Palmer, *The Law of Restitution* §§ 1.1, 1.2 (1978). The Restatement of Restitution § 1 states "[a] person who has been unjustly enriched at the expense of

---

2. Although section 38–22–105 allows owners to protect their interest in land from liens by posting proper notice, such notice does not automatically foreclose all liability. By statute and case law, contractors and others may still pursue any other available remedies, such as breach of contract or unjust enrichment. *See* § 38–22–124, 10 C.R.S. (1998); *Frank M. Hall & Co. v. Southwest Properties Venture*, 747 P.2d 688, 690 (Colo.App. 1987).

3. Whether this is an appropriate measure of damages is an issue that is not before us, and, particularly in light of our decision to reverse the

judgment on substantive grounds, we decline to address damages.

4. DCB asserts that the court of appeals ruled as a matter of law that no unjust enrichment claim could lie where a landlord has received improvements from a tenant's contractor. We do not agree with this characterization of the court of appeals' ruling. The opinion states that *"given the undisputed factual circumstances summarized above,* a claim for unjust enrichment will not lie, as a matter of law." *DCB Constr.*, 940 P.2d at 961 (emphasis added).

another is required to make restitution to the other." Restatement of Restitution § 1 (1937). The comment to this section explains that "[a] person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust." Restatement of Restitution § 1 cmt. a (1937).

■ When restitution is the primary basis of a claim, as opposed to a remedy for bargains gone awry, it invokes what has been called a "contract implied in law." *See* Joseph M. Perillo, *Restitution in a Contractual Context,* 73 Colum. L.Rev. 1208, 1212–13 (1973) (noting the fundamental dichotomy between "quasi-contract as a source of primary rights versus quasi-contract as a remedy"); *see also Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.,* 821 P.2d 788, 794–95 (Colo. 1991) (characterizing an unjust enrichment claim as a contract implied in law).

■ The unjust enrichment claim in the context of a contract implied in law does not depend in any way upon a promise or privity between the parties. *See Wistrand v. Leach Realty Co.,* 147 Colo. 573, 576, 364 P.2d 396, 397 (1961). As the court of appeals noted in the instant case, "the claim arises, 'not from consent of the parties, as in the case of contracts, express or implied in fact, but from the law of natural immutable justice and equity.'" *DCB Constr.,* 940 P.2d at 962 (citing *Valley Realty & Inv. Co. v. McMillan,* 160 Colo. 109, 112, 414 P.2d 486, 488 (1966)). Thus a "contract implied in law" is not really a contract at all, and may even be imposed in the face of a clearly expressed contrary intent if justice requires. *See, e.g., Sears Roebuck & Co. v. Ragucci,* 203 N.J.Super. 82, 495 A.2d 923, 926 (N.J.Super. Ct. Law Div. 1985).

The elements of the claim are based upon the principles stated in the Restatement of Restitution § 1, and we have previously expressed these elements as follows:

> (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value.

*Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093, 1096 (Colo.1982).

This articulation of the test has spawned some confusion. For example, the second prong of this test calls for the defendant to "appreciate" the benefit. Courts using tests with similar language frequently analyze "appreciation" as knowledge or acquiescence. *See e.g., Thompson v. Welles,* 243 Kan. 503, 758 P.2d 738, 745 (Kan.1988) (using the terms appreciation and knowledge interchangeably); *Mass Transit Admin. v. Granite Constr. Co.,* 57 Md.App. 766, 471 A.2d 1121, 1125 (Md.Ct.Spec.App.1984) (setting forth the second prong of the test as "appreciation or knowledge by the defendant of the benefit"); *S & M Rotogravure Serv., Inc. v. Baer,* 77 Wis.2d 454, 252 N.W.2d 913, 915–16 (Wis.1977) (equating appreciation with knowledge and finding appreciation where defendant knew of the remodeling work). However, the second prong really speaks only to the question of whether the materials and/or services received are of value to the defendant. *See* Restatement of Restitution § 1 & cmt. a (1937).

The third prong of this test requires defendant to "accept" the benefit. This requirement is rarely meaningful because in many cases the defendant is unable to stop plaintiff from conferring the benefit at issue and/or cannot return it. *Compare, Jordan v. Lone Pines, Ltd.,* 41 Colo.App. 152, 580 P.2d 1273 (1978) (denying recovery where defendant could not have stopped benefit and could not reasonably return it), *with Cablevision of Breckenridge,* 649 P.2d at 1093 (allowing recovery where defendant could not have returned benefit). Hence "acceptance" should be weighed with other factors only in situations where a defendant was in a position, and should reasonably have been expected, to prevent the benefit from being conferred.

■ Because experience has demonstrated some flaws in the old test, we now clarify and restate the test for recovery under a theory of unjust enrichment as: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit with-

out paying.[5] We next proceed to apply this general test to this case in the context of tenant finish construction.

## III.

■ Considering the first prong of the test, in this case there is no question that any benefit CCDC received came at DCB's expense. DCB performed construction work on CCDC's building over a period of approximately six months, and Tenant paid DCB for only a fraction of the work.

■ The second prong examines whether defendant was benefited or enriched. The trial court specifically found, based on the expert evidence submitted, that the building is now worth more than it was before DCB's work. In its order, the trial court rejected the argument that under *Frank M. Hall & Co. v. Southwest Properties Venture*, 747 P.2d 688 (Colo.App.1987), the defendant must have re-leased or sold the premises in order to have "appreciated" the benefit. The trial court stated:

> The *Hall* case does not contain a definition of the word "appreciated." The Court can assume that one of the meanings of appreciated must be that the owner received a benefit, however, since this building has not yet been leased, CCDC argues that the test set forth in the *Hall* case has not been met. The Court specifically finds that the word "appreciated" cannot mean that the property has to have been leased or sold before a judgment based on unjust enrichment can enter. . . . I find that CCDC has appreciated the benefit because the building is now more valuable than it would be without [the improvements made by DCB].

■ As we noted above, the term "appreciation" requires the court to determine whether defendant received a benefit. Evidence that the building has been sold or released, depending upon the terms and circumstances, might support the conclusion that defendant indeed received a benefit. However, the absence of a sale or re-lease does not definitively prove the converse.

The trial court's finding that the building is now worth more after the remodeling than before is sufficient to show that CCDC benefited.[6] Accordingly, the first two elements of the test, benefit to CCDC at DCB's expense, have been established.

## IV.

The third prong of the test requires consideration of whether it would be unjust to allow CCDC to retain the benefit conferred without paying its value. The notion of what is or is not "unjust" is an inherently malleable and unpredictable standard. Because tenants frequently contract for improvements to leased property, the law must be sufficiently predictable so that the appropriate parties can adequately calculate and make adjustments for the risks they face. Landlords need to know, with some degree of certainty, what behavior and circumstances will subject them to these claims; and contractors likewise should be able to make risk-adjusted pricing decisions and implement appropriate payment-protection provisions. Thus, we think it is important to articulate a general rule, applicable in this context, that provides more stability and predictability than an ad hoc review. *Compare S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis.2d 454, 252 N.W.2d 913, 918 (Wis.1977) (allowing an unjust enrichment claim against a landlord and distinguishing it from cases denying claims because in this case there was no evidence the landlord had paid another for the work) *with Puttkammer v. Minth*, 83

---

**5.** *See* Restatement of Restitution § 1 & cmt. a (1937); Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am. U.L.Rev. 547, 554–560 (1986)(tracing the history of the claim and noting that courts have occasionally added extra, often inappropriate, elements).

**6.** The court of appeals was skeptical about whether CCDC had been enriched since the construction work was "simply part of the consideration that the lessee agreed to provide to the lessor in return for the creation of a leasehold in the property by the lessor." *DCB Constr.*, 940 P.2d at 964. Under the second prong however, we consider only whether, in gross, defendant was enriched by plaintiff's work. We do not consider whether defendant had provided compensation for that gain, although in some cases the question of uncompensated gain could be an important factor under the third prong of the test.

Wis.2d 686, 266 N.W.2d 361, 364 (Wis.1978) (disallowing an unjust enrichment claim based on cases denying claims where owner had paid another and distinguishing *Baer* because of an allegation in *Baer* that work was performed at the special instance and request of landlord).

◼ With this principle in mind, we begin our analysis with two basic propositions. First, there is the general rule that when an individual who is not the owner orders improvements on the owner's land and then fails to pay the contractor or supplier, "the owner is not liable to the contractor or supplier unless he agreed to pay them." 3 Dan B. Dobbs, *The Law of Remedies* § 12.20(3) at 473 (2d ed.1993); *see also Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co.*, 138 Colo. 314, 332 P.2d 892 (1958) (noting that an owner cannot be personally liable for improvements when there is no privity of contract between contractor and owner).

◼ The rule seeks to protect personal autonomy and rights of choice. *See generally* Dobbs, *supra* § 12.20(3) at 472. Ordinarily, an owner should not be forced into "legal relations with someone other than the contract partner he ha[s] chosen." [7]

◼ Second, the Restatement of Restitution § 110 provides that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of the failure of performance by the third person." Restatement of Restitution § 110 (1937) (emphasis added).

Application of these principles to this case suggests that CCDC should not be held lia-ble for the improvements ordered by Tenant. CCDC did not agree to pay for the improvements, and should not be forced into a quasi-contractual relationship with DCB. It is not enough that CCDC owns the improved building and that Tenant breached its contract to pay for those improvements. There must be more. It is unjust for a contractor to bear the loss of a debt unpaid. However, it is not necessarily just or right to impose that debt upon the owner of the property merely to rectify the first injustice. If that were so, anyone benefiting from another's services could be liable for those services. We all enjoy the protection that we are generally not liable for services or goods for which we did not contract. The courts should be slow to impose obligations in the absence of a contract; slow to impose the debts of one party upon another.

Hence an injustice that warrants the court's imposition of the remedy of restitution must rest not only in the loss to the contractor, but also in the conduct of the owner. The Restatement of Restitution sets forth several general doctrines, such as fraud, mistake, coercion, and request, that are instructive in defining the notion of injustice. Although this list does not exhaust the potential sources of injustice, it provides a framework with which to begin analysis of unjust enrichment claims.

Some of these doctrines lend themselves to application within the context of nonbargained benefits.[8] If, for example, a landlord has actually engaged in fraud to induce a contractor either to enter into the contract with a tenant, or to continue performance when the contractor might otherwise have ceased, this situation will likely sustain a

---

**7.** John P. Dawson, *The Self-Serving Intermeddler*, 87 Harv. L.Rev. 1409, 1444 (1974). In the analogous context of mechanics' liens, Dawson notes that where a lease authorizes but does not require a lessee to make an improvement, most courts deny a lien on the owner's interest, regardless of whether the improvements were knowingly permitted or specifically approved by the lessor. *See id.* at 1454.

**8.** Other doctrinal approaches defeat the notion of a contract implied in law. For example, the court of appeals in this case referred to the lack of a "request from the party to be charged." *DCB Constr.*, 940 P.2d at 962. This notion is derived from Chapter 4 of the Restatement, Benefits Conferred at Request, and concerns situations where two parties have actually made some sort of bargain. If, in fact, a landlord had "requested" the services as contemplated in this part of the Restatement, we would be dealing with a contract between the landlord and contractor, either express or implied in fact.

It is also doubtful that the doctrine of mistake would apply in this third-party context since such mistake, whether unilateral or not, is not likely to have been connected in any manner to the landlord.

claim of unjust enrichment. *See* Restatement of Restitution, ch. 2 (1937). Likewise, principles of coercion or duress might provide a foundation for unjust enrichment as a primary source of right. *See* Restatement of Restitution, ch. 3 (1937).

In the instant case, we do not have allegations that fit neatly into the applicable "injustice" categories suggested by the Restatement. However, the general theme of these doctrines sheds light on the concept of unjust enrichment in the landlord/tenant/contractor context. The principle that defines and connects these examples is that "injustice" involves some form of improper conduct by the party to be charged.

▮▮ DCB cites *Hall* and contends that the nature of CCDC's involvement in the enterprise is sufficient to render its retention of the benefit unjust. In *Hall*, the court of appeals held that a contractor could recover in unjust enrichment from a landlord where:

[t]he landlord not only gave its permission for the work but took an active role in its completion. Indeed, the lease required that the improvements be made, and provided that they would revert to the landlord upon termination of the lease. They were made according to the landlord's specifications, and were inspected and approved by it.

*Hall*, 747 P.2d at 691. DCB asserts that here, as in *Hall*, CCDC gave permission for the work, took an active role in its completion, required that the improvements be made according to CCDC specifications, and contracted to retain the improvements upon lease termination.

We hold that these facts alone would not render CCDC's retention of the benefit unjust. A landlord will virtually always retain the right to give or withhold permission for work to be done on its premises. As owner of the premises, the landlord is generally

required to apply for and execute building permits or other necessary documents. The landlord has a strong and legitimate interest in pre-approving and monitoring any significant construction. Similarly, the landlord's participation in creating and/or approving specifications is a natural product of its interest in the property and is a matter of concern solely between the landlord and the tenant.[9]

We do not find it unjust for a landlord to be closely involved in an enterprise for which it has contracted and given consideration to another. We thus disapprove that portion of *Hall* that would allow an unjust enrichment claim based solely upon the landlord's involvement. If we were to approve this formula for evaluating injustice, we would adopt a rule that essentially makes the landlord an insurer of the risk assumed by contractors in extending credit to tenants. *See* Dawson, *supra* at 1448 (noting policy problems with restitution claims in this context and asking, "[i]f it can be shown that the third party has received an uncompensated gain, is he to be made, to the extent of the gain, an insurer of the return promised by the defaulting promisor?").

▮▮ Rather, we hold that injustice in this context requires some type of improper, deceitful, or misleading conduct by the landlord. This is in harmony with our decision in *Ninth District Production Credit Assoc. v. Ed Duggan, Inc.*, 821 P.2d 788 (Colo.1991), the Restatement of Restitution, and the weight of authority in other jurisdictions. *See, e.g., Insulation Contracting & Supply v. Kravco, Inc.*, 209 N.J.Super. 367, 507 A.2d 754, 760 (N.J.Super.Ct.App.Div.1986) (referring to a case requiring that defendant engage in misleading behavior); *Kemp v. Majestic Amusement Co.*, 427 Pa. 429, 234 A.2d 846, 848 (Pa.1967) ("[I]n the absence of some misleading by the third party, the mere fail-

---

9. *See* Dawson, *supra* at 1447–48 (noting that because an owner has contracted with a tenant or general contractor for specific improvements, the owner's "knowledge that the work is being done or his constant presence at the building site adds nothing to the grounds for restitution as these elements might in another context").

DCB also argues that it is important that CCDC knew of and acquiesced in the renovation and "never objected to anything that DCB was doing." As discussed above, CCDC's "acceptance" of the work carries no significance in this context where the work was an expected result of its lease with Tenant. CCDC could not be expected to object to or attempt to stop work which was clearly anticipated and bargained for with another.

ure of performance by one of the contracting parties does not give rise to a right of restitution against the third party."); *Frank W. Whitcomb Constr. Corp. v. Cedar Constr. Co.*, 142 Vt. 541, 459 A.2d 985, 988 (Vt.1983) ("Certainly there is nothing to show the plaintiff to have been misled to its detriment either deliberately or accidentally."); *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash.App. 719, 741 P.2d 58, 65 (Wash.Ct.App.1987) (identifying a common thread among cases finding unjust enrichment in that they "involved some clear act of bad faith by the defendant" and noting that the defendant there had not misled the plaintiff).

In *Duggan,* a secured creditor profited from an unsecured creditor's provision of goods that enhanced the value of the collateral. The court held that the secured creditor's "active role in creating a perception that the [goods] would be paid for" along with other factors, such as a memo indicating that the secured creditor would approve and pay for purchases from the unsecured creditor, created circumstances that would allow a jury to find unjust enrichment. *Duggan,* 821 P.2d at 798. Hence, the secured creditor misled the unsecured creditor.

Here, there is no evidence that CCDC improperly created the impression that either CCDC or Tenant would pay for the work being done. In fact, CCDC posted a notice that not only informed DCB that it would not be subject to mechanics' liens, but also explicitly disclaimed any type of liability for the work. A notice alone might not suffice to absolve a landlord from liability if the landlord had otherwise engaged in improper conduct that negated the effect of a notice. However, here CCDC did not engage in any type of improper, deceitful, or misleading conduct. Absent such conduct, we do not find that CCDC's retention of any benefit received is unjust.

## V.

In order for a tenant's contractor to attach liability upon an owner of property under an unjust enrichment claim, the contractor must be able to show that the landlord has engaged in some form of improper, deceitful, or misleading conduct. CCDC did not mislead DCB in any way, thus CCDC was not unjustly enriched by DCB's performance of its contract with Tenant. Accordingly, we affirm the judgment of the court of appeals.

Chief Justice MULLARKEY dissents, and Justice SCOTT joins in the dissent.

MULLARKEY, Chief Justice, dissenting.

In reversing the trial court's determination that the landlord in this case was unjustly enriched by the work of the general contractor, the majority creates a new requirement for a claim of unjust enrichment in this context. Specifically, the majority holds that the plaintiff in this case is not entitled to recovery because it failed to establish wrongful conduct by the defendant. *See* maj. op. at 122. Because the majority's holding is contrary to existing Colorado law regarding unjust enrichment and the change in the law which it adopts is unwise, I respectfully dissent.

## I.

In January of 1992, Central City Development Company (CCDC) entered into a five-year lease, *see* maj. op. at 117 n. 1, with Santa Barbara Capital, Inc. (Tenant). *See id.* at 117. The lease provided that the Tenant could only use the building for limited stakes gambling, that the Tenant would pay all costs associated with remodeling, and that CCDC had the right to approve all plans and specifications for remodeling. *See id.* at 117. The lease also required that the Tenant was supposed to obtain a completion bond equal in the amount to the estimated cost of the proposed alterations and additions. At the end of the lease, the improvements were to become the property of CCDC.

The Tenant originally hired a contractor, which it terminated in June. The Tenant then entered into a contract with DCB Construction Co., Inc. (DCB) for significant work on the interior of the building. *See id.* Additionally, CCDC was aware of the plans and signed building permit applications required by the city for the work to begin. As required by the lease, the Tenant posted a

notice that CCDC would not be subject to a lien under section 38–22–105(2), 10 C.R.S. (1998). Nevertheless, during the course of DCB's work, a representative from CCDC observed the construction on a regular basis. The trial court found that DCB generally knew that CCDC was going to establish some sort of security arrangement with the Tenant for payment of the contractors. The Tenant never obtained the bond required by the lease. Instead, the Tenant and CCDC established an escrow account at a bank that was to be funded with the amount estimated to complete the project; however, the Tenant only committed $50,000 to escrow, which CCDC accepted.

DCB completed significant improvements to the interior of the building, including excavating the ground floor; building a foundation and a structural steel frame; and installing carpentry framing, roof joists, stairs, a fire sprinkler system, electrical wiring, plumbing, heating, ventilation, and air conditioning. *See* maj. op. at 118. DCB ceased work in November 1992 because the Tenant failed to pay DCB's submitted bills of $371,245. The Tenant eventually paid only $76,515. DCB sued CCDC for its unrecovered costs under a claim of unjust enrichment.

Testimony at the trial showed that DCB's improvements substantially contributed to the building's value and that CCDC would eventually recover that value in its casino property. Based on testimony at the trial, the trial court entered judgment in favor of DCB in the amount of $331,191, which included the amount not paid by the Tenant plus interest and costs.

## II.

As noted by the majority, the notice under section 38–22–105(2) is not at issue here because such notice does not preclude claims of unjust enrichment. *See* maj. op. at 118 n. 2; § 38–22–124, 10 C.R.S. (1998). The doctrine of unjust enrichment does not depend on any contract, but rather, on "the need to avoid unjust enrichment of the defendant notwithstanding the absence of an actual agreement to pay for the benefit conferred." *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093, 1097 (Colo.1982). Under our current case law, the plaintiff must establish the following elements:

> (1) that a benefit was conferred on the defendant by the plaintiff; (2) that the benefit was appreciated by the defendant; and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value.

*Id.* at 1096–97.

The majority reformulates "the test for recovery under a theory of unjust enrichment as (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." Maj. op. at 120. The majority then finds that DCB satisfied steps one and two, *see id.* at 120, but as a matter of law, did not satisfy step three based on the facts of this case, *see id.* at 123.

The reformulating of the test is not particularly significant except that the majority creates a new requirement in its analysis of step three, stating that in this case, "the contractor must be able to show that the landlord has engaged in some form of improper, deceitful, or misleading conduct." *Id.* While I agree that improper, deceitful, or misleading conduct *could* prove a claim of unjust enrichment, I do not believe that such conduct *must* exist for such a claim to prevail. By putting this restriction on the unjust enrichment test, the majority sharply narrows the claim's scope. In my view, imposition of a wrongful conduct requirement is improper. There are many situations which fall short of wrongful conduct but are so unjust that the claim should lie.

The majority relies on the Restatement of Restitution (1937); *Ninth District Production Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788 (Colo.1991); and various out-of-state cases for its conclusion that some wrongful conduct must exist in this case for DCB to prevail. *See* maj. op. at 122–123. However, in my view, the Restatement, *Duggan*, and case law from several other jurisdictions (including our own) do not require

wrongful conduct to prove a claim of unjust enrichment.

The majority acknowledges that circumstances other than improper conduct could prove unjust enrichment. *See* maj. op. at 121. The Restatement states:

A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.

Restatement of Restitution § 112 (1937). The Restatement itself acknowledges that there are numerous ways for a claimant to prove unjust enrichment (e.g., mistake, coercion, request).

The conclusion that wrongful conduct by the owner is not the *sine qua non* for recovery in this case is consistent with *Duggan.* There we held that the trial court improperly instructed the jury and should have informed the jury:

It is not inequitable for a secured creditor to retain a benefit conferred by an unsecured creditor without compensating the unsecured creditor if the secured creditor does not initiate or encourage the transaction between the unsecured creditor and the debtor by which that benefit is conferred.

*Duggan,* 821 P.2d at 800. Nowhere in *Duggan* did we indicate that encouraging the transaction must be wrongful. I note that the "initiate or encourage the transaction" requirement in *Duggan* applied to a situation where an unjust enrichment claim undermined the predictability of the priority of creditors created by a statutory scheme. *See id.* at 797 (holding that unjust enrichment claim could prevail contrary to the UCC priority system). There is no applicable statutory scheme in this case, so the "initiate or encourage the transaction" requirement in *Duggan,* while relevant, may not be dispositive. *See Cedar Lane Invs. v. American Roofing Supply of Colorado Springs,* 919 P.2d 879, 885 (Colo.App.1996) (distinguishing the rule in *Duggan* because no statutory scheme was in place in this case).

Furthermore, while several out-of-state cases have required some deceitful conduct by the landlord in cases involving restitution claims, *see* maj. op. at 122–123, several other courts, including our own court of appeals, have not. *See Frank M. Hall & Co. v. Southwest Properties Venture,* 747 P.2d 688, 691 (Colo.App.1987) (holding that an unjust enrichment claim could exist where landlord took an active role in completion of construction work); *Murdock–Bryant Constr., Inc. v. Pearson,* 146 Ariz. 48, 703 P.2d 1197, 1203 (Ariz.1985) (awarding restitution to subcontractor against parties who received a benefit); *Commerce v. Equity Contracting Co., Inc.,* 695 So.2d 383 (Fla.Dist.Ct.App.1997) (stating that subcontractor could recover against owner if owner did not pay for benefit received); *Idaho Lumber v. Buck,* 109 Idaho 737, 710 P.2d 647, 655–57 (Idaho App. 1985) (allowing contractor to recover against owner). In *Hall,* a case remarkably similar to this case, our court of appeals held that a contractor could recover on an unjust enrichment claim from a landlord where "the landlord not only gave its permission for the work but took an active role in its completion." *Hall,* 747 P.2d at 691.

Contrary to the majority, I would not adopt a per se rule that requires some type of wrongful conduct in order for DCB to recover.[1] Such a requirement unduly re-

---

1. In a footnote, the majority suggests that if the tenant agrees to make improvements, the landlord is not unjustly enriched because the improvements are part of the consideration the tenant agreed to provide. *See* maj. op. at 120 n. 6. However, the lease between CCDC and Tenant was terminated before all of the agreed consideration was given by both parties. As Dobbs states:

In the landlord's case, the landlord agrees to lease the land for a term for specified rent plus a residual interest in whatever improvements the tenant makes or is obliged to make. If the tenant gives up the premises before the term is up and the landlord accepts them, then to the extent that the landlord has premises valued in excess of the present value of the remaining rental due, he may be unjustly enriched.

Dan B. Dobbs, *Law of Remedies* § 12.20(3), at 474 n.25 (2d ed.1993). Consistent with my view, Dobbs does not mention that wrongful conduct is

stricts a party's ability to recoup its costs and is inconsistent with Colorado case law. Properly applying *Hall* and *Duggan* here, ample evidence exists showing that CCDC took an active role or encouraged the improvements which supports the trial court's ruling that CCDC was unjustly enriched.

### III.

Even if we were to rely only on the Restatement of Restitution, as does most of the majority's opinion, the facts here support a finding of unjust enrichment because there is evidence that CCDC requested that DCB make improvements. *See* Restatement of Restitution § 112 (listing "request" as an exception supporting restitution). CCDC's request can be inferred from the lease provisions that required the Tenant to remodel the building as a casino because the lease explicitly limited the building's use to only limited stakes gambling. The lease provided that CCDC retain all of the improvements at the expiration of the lease. Moreover, CCDC retained the right specifically to approve the improvements, and in fact did sign the relevant building permits and actively monitored the work throughout. Finally, the trial court found that DCB knew of an arrangement between CCDC and the Tenant to provide payment to the contractors.

In its opinion, the majority relies on two general propositions of law: (1) an owner is not personally liable for improvements made to his property without his assent and (2) "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely* because of the failure of performance by the third person ." Maj. op. at 121–122 (citations omitted). Here, neither principle is applicable because CCDC clearly knew of and assisted in obtaining the improvements. CCDC could have forced the Tenant to provide a bond adequately covering the construction costs as stated in the lease, but failed to do so. Rather, CCDC allowed the Tenant to proceed with the improvements with an escrow account lacking adequate funds to cover the costs of the construction.

required in this type of situation for a claimant to

### IV.

For the foregoing reasons, CCDC was not simply a bystander which should be allowed to keep all of the improvements done by DCB without paying for them. I would follow the court of appeals' holding in *Hall* and would allow the trial court's ruling to stand. *See Hall*, 747 P.2d at 691. There is sufficient evidence in the record to support the trial court's determination that CCDC was unjustly enriched because it would be inequitable to allow CCDC to keep the improvements made by DCB without paying for them. Accordingly, I respectfully dissent.

I am authorized to say that JUSTICE SCOTT joins in this dissent.

recover under a theory of unjust enrichment.