**R.A.S. BUILDERS, INC., a Colorado corporation, Petitioner,**

v.

**EUCLID & COMMONWEALTH AS-SOCIATES, a California limited partnership, Respondent.**

**No. 96SC745.**

Supreme Court of Colorado,
En Banc.

Sept. 14, 1998.

Pearson Milligan & Horowitz, P.C., Robert Horowitz, Jo Lauren Seavy, Denver, for Petitioner.

Phillip C. Gans, P.C., Phillip C. Gans, Denver, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari in this case to review the court of appeals' ruling in *R.A.S. Builders, Inc. v. Euclid & Commonwealth Associates,* No. 95CA1395 (Colo.App. Aug. 29, 1996) (not selected for publication). The issue on review is identical to that presented in *DCB Construction Co., Inc. v. Central City Development Co.,* No. 96SC672, 965 P.2d 115 (Colo.1998), and involves whether a contractor that improved leased property under a contract with the tenant can recover from the owner of the property for unjust enrichment when the tenant fails to pay the contractor. As we held in *DCB Construction,* any enrichment of the owner will not be unjust unless the owner engaged in some type of improper, deceitful, or misleading conduct. Although the owner in this case had agreed, under certain conditions, to pay the tenant $60,000 toward remodeling, the owner did not in any way mislead or deceive the contractor. Accordingly, we affirm the court of appeals' ruling that this contractor may not recover from the owner.

I.

Euclid & Commonwealth Associates (Euclid) is the owner of a shopping center located on East Hampden Avenue in Aurora. Euclid retained Sevo Miller, Inc. to manage the property. In January of 1994, Euclid leased the property to Child Care Centers of North America, Inc. d/b/a Kid's Place (Child

Care Centers). The lease was for a term of seven years and provided for graduated rental payments beginning at zero for the first three months and increasing incrementally to $2,567.50 per month. Under the terms of the lease, Child Care Centers was responsible for all interior tenant finish construction, and Euclid had the right to approve the plans and specifications for such construction. Paragraph 3.6 of the lease specified that all interior construction would be done at Child Care Centers' sole cost and expense, and that Child Care Centers would be "wholly responsible to all contractors, subcontractors, laborers and materialmen." Child Care Centers agreed to ensure that no liens attached to the property and agreed to, and did, post a notice that the property would not be subject to any liens.

Euclid agreed to pay $60,000 to Child Care Centers to defray the cost of the construction if (1) the work was substantially completed; (2) Child Care Centers delivered to Euclid all lien waivers for work performed; and (3) the appropriate agency had issued a certificate of occupancy.

Child Care Centers subsequently entered into a contract with R.A.S. Builders, Inc. (R.A.S.) for tenant finish construction. The contract price was $101,840 plus any change orders. Within a couple of months, Child Care Centers began to experience financial difficulties. It defaulted on the lease and never paid any rent to Euclid. It also failed to pay R.A.S. for the work performed, and by September of 1994 had filed for bankruptcy protection. R.A.S. eventually filed suit against Sevo Miller, Euclid, and two of the principals of Child Care Centers. The only claim with which we are concerned here is R.A.S.'s claim of unjust enrichment against Euclid, the owner of the shopping center.

The parties offer somewhat differing versions and characterizations of the facts leading up to this suit, however the trial court made findings of fact on all pertinent issues. The record supports these findings, and thus we accept them for purposes of our review. *See First Interstate Bank v. Tanktech, Inc.,* 864 P.2d 116, 122 (Colo.1993) ("We defer to findings of fact by the trial court unless clearly erroneous and not supported by the record .").

When negotiating the tenant finish construction contract, Child Care Centers informed R.A.S. of the $60,000 allowance from Euclid. Concerned about Child Care Centers' finances, David LaVoy and Mike Brown from R.A.S. telephoned Ira Schwartz, a representative of Sevo Miller, the property manager. The trial court found that during that brief conversation, Schwartz confirmed to LaVoy and Brown that the lease between Child Care Centers and Euclid did contain a provision for Euclid to contribute $60,000 to Child Care Centers for tenant finish construction under certain conditions. The court found that Schwartz did not relate the details of the conditions, but that LaVoy and Brown both had sufficient experience in the construction industry to know generally what these conditions were. The court also found that Schwartz told LaVoy and Brown that Euclid was satisfied that Child Care Centers would be able to perform under the lease, but that if R.A.S. required further confirmation with respect to the tenant finish contract, R.A.S. would have to "do [its] own homework."

R.A.S. began the construction in May of 1994, but various delays caused the work to extend beyond the original completion date. The trial court found the delays to be the usual ones associated with construction contracts. On August 1, 1994, Child Care Centers issued a stop work order to R.A.S. directing R.A.S. to cease construction activity immediately. The letter asserted that delays in the project would cause Child Care Centers to miss the new enrollment period for the fall, 1994 school year and would result in a $40,000 loss to Child Care Centers.

R.A.S. notified Child Care Centers that it could be finished with the work by August 15, and, without response or objection from Child Care Centers, continued to work until that date. The court found that R.A.S. continued to work in order to forestall anticipated legal problems implied in the letter from Child Care Centers.

The court found that as of August 1, R.A.S. had completed sixty percent of the work, and by August 15, eighty percent of

the work. The court also found that R.A.S.'s failure to complete the entire project was attributable in part to the fact that Child Care Centers had not provided certain necessary appliances for installation.

The court held that under the circumstances, Euclid received a benefit from R.A.S. because the construction improved the premises. The court further held that it would be unjust for Euclid to retain the benefit conferred by R.A.S. without payment of its value. The court found that the total contract price, including change orders, amounted to $106,695. Noting that Euclid did not realize its expectation under the lease because Child Care Centers paid no rent, the court determined that an equitable award to R.A.S. would be eighty percent of the $60,000 allowance Euclid had promised to pay Child Care Centers.

Euclid appealed, and the court of appeals reversed, holding that there were no special and unique circumstances that would create an such an injustice as to merit restitution. *See R.A.S. Builders,* No. 95CA1395, slip op. at 4. We agree.

### II.

In *DCB Construction,* we clarified that the elements of an unjust enrichment claim are: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *See DCB Constr.,* 965 P.2d at 120.

Here, the work performed on Euclid's property was clearly at R.A.S.'s expense. R.A.S. completed eighty percent of the work on a $106,695 project and was not paid. With respect to the second prong of the test, the trial court found, and the record supports, that R.A.S.'s improvements enhanced the value of Euclid's property. The trial court noted that Euclid's representative conceded at trial that the improvements had value to Euclid.

Therefore, the dispute centers on the third prong of the test. In *DCB Construction,* we held that it is not enough that a tenant breached its contract to pay a contractor and that the landlord owns the property improved by the construction. *See DCB Constr.,* 965 P.2d at 122 (citing Restatement of Restitution § 110). Instead we concluded that the facts must also demonstrate an injustice such as fraud or coercion. *See generally* Restatement of Restitution (1937). At a minimum, there must be some type of improper, misleading, or deceitful conduct by the owner. Otherwise, we adhere to the general rule that an owner is not liable for improvements made to his property for which he did not agree to pay. *See DCB Constr.,* 965 P.2d at 121. As we noted, this rule protects the right to be free of liability for the contractual obligations of another. *See id.* at 965 P.2d at 121–122.

Here, although Euclid contracted to pay Child Care Centers $60,000 toward tenant finish if Child Care Centers had met the required conditions and not defaulted under the lease, the terms of that contract were not met. Child Care Centers did not fulfill the conditions precedent necessary for payment under the lease, and thus Euclid was not required to tender payment. Euclid, through its agent Sevo Miller, never promised to pay or even implied that it would pay R.A.S directly for any of its work.[1] According to the trial court's findings of fact about the telephone conversation between Schwartz, LaVoy, and Brown, Schwartz simply confirmed the terms of the lease with Child Care Centers. Schwartz told LaVoy and Brown that Euclid was required to pay $60,000 to Child Care Centers under certain conditions. This statement did not mislead or deceive R.A.S. in any way; it was a fact. Schwartz did not attempt to urge R.A.S. to rely on this payment in making a determination about the creditworthiness of Child Care Centers. To the contrary, Schwartz advised

---

1. The record reflects that there was some discussion about whether Euclid would issue a joint check to both Child Care Centers and R.A.S. upon completion of the work. However,

Schwartz testified that he told LaVoy and Brown that he would have to consult the owner because he did not have authority to agree on the owner's behalf to issue a joint check.

R.A.S. to conduct its own investigation of Child Care Centers to evaluate any risk.

Under these circumstances, we find that Euclid, through its agent Sevo Miller, did not engage in any improper, misleading, or deceitful conduct. Absent any of these conditions, we find that any enrichment of Euclid by virtue of R.A.S. performing its contract with Child Care Centers was not unjust.

Accordingly, we affirm the decision of the court of appeals.

Chief Justice MULLARKEY dissents and Justice SCOTT joins in the dissent.

Justice BENDER does not participate.

Chief Justice MULLARKEY dissenting.

The majority reverses the trial court's ruling that the plaintiff in this case, R.A.S. Builders, Inc. (R.A.S.), could recover some of its costs for improvements to property owned by the defendant, Euclid & Commonwealth Associates (Euclid), based on a claim of unjust enrichment. For the reasons stated in my dissent in *DCB Construction Co., Inc. v. Central City Development Co.*, 965 P.2d 115 (Colo.1998) (Mullarkey, C.J., dissenting), I would find that ample evidence exists in this case to support the trial court's finding of unjust enrichment. Accordingly, I respectfully dissent.

### I.

The circumstances in this case are very similar to *DCB Construction*, where a contractor brought an unjust enrichment claim against the owner of a property for improvements made to the property after the tenant defaulted on paying the contractor. *See DCB Constr.*, 965 P.2d at 118. Here, Euclid leased some property to Child Care Centers of North America, Inc. d/b/a/ Kid's Place (Tenant) who then contracted with R.A.S. for tenant finish construction. *See* maj. op. at 1242–1243. After R.A.S. performed $106,695 worth of work, the Tenant defaulted on its contract with R.A.S. Subsequently, R.A.S. brought a claim of unjust enrichment against Euclid, which kept the construction improvements done by R.A.S.

The majority applies its newly formulated unjust enrichment test from *DCB Construction*, 965 P.2d at 120. In order for a plaintiff to establish an unjust enrichment claim, the plaintiff now must show: (1) at plaintiff's expense, (2) defendant received a benefit, and (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *See* maj. op. at 1244. The majority holds that R.A.S. satisfied steps one and two, but is precluded from recovering because it failed to show "some type of improper, misleading, or deceitful conduct" by Euclid. Maj. op. at 1244. The requirement of improper, misleading, or deceitful conduct imposes an additional hurdle that has no basis in our prior case law.

In my dissent in *DCB Construction*, I explained why wrongful conduct should not be a prerequisite to an unjust enrichment claim. *See DCB Constr.*, 965 P.2d at 124–125. Thus, I would follow prior Colorado case law and affirm the trial court's determination in favor of R.A.S. under its claim for unjust enrichment. *See Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 797 (Colo.1991) (holding that an unjust enrichment claim could prevail contrary to the UCC priority system); *Frank M. Hall & Co. v. Southwest Properties Venture*, 747 P.2d 688, 691 (Colo.App.1987) (holding that an unjust enrichment claim could exist where landlord took an active role in completion of construction work).

The facts of this case show that the majority's requirement of wrongful conduct undermines the principles of unjust enrichment and inequitably allows Euclid to keep improvements for which it did not pay. The lease between Euclid and the Tenant explicitly stated that the Tenant was responsible for the tenant finish construction, that Euclid had the right to approve of such plans, that all non-moveable alterations would become the property of Euclid, and that Euclid would pay the Tenant $60,000 for the construction provided certain conditions were met. Additionally, an agent from Euclid confirmed to R.A.S. that Euclid was to contribute $60,000 to the Tenant for tenant finish construction

under certain conditions. *See* maj. op. at 1243. In fact, the contract between the Tenant and R.A.S. stated that the "[b]alance of contract to be paid by landlord [Euclid] via tenant allowance joint check at completion." Moreover, the trial court found that Euclid had an agent overseeing the project.

Contrary to the majority, I would not adopt a per se rule that requires some type of wrongful conduct in order for R.A.S. to recover. As I stated in my dissent in *DCB Construction,* such a requirement unduly restricts a party's ability to recoup its costs and is inconsistent with Colorado case law. *See DCB Constr.,* 965 P.2d at 125. Properly applying *Hall* and *Duggan*[1] here, I would hold that ample evidence exists showing that Euclid took an active role in or encouraged the improvements which supports the trial court's ruling that Euclid was unjustly enriched. *Cf.* Dan B. Dobbs, *Law of Remedies* § 12.20(3), at 469–70 (2d ed.1993) (stating that while a subcontractor is not generally allowed restitution against a landowner, a subcontractor is entitled to enforce its claim against any funds still held by the landowner but which are owed to the general contractor).

## II.

Even if we were to rely only on the Restatement of Restitution (1937), the facts here support a finding of unjust enrichment because there is evidence that Euclid requested that R.A.S. provide the tenant finish construction. *See* Restatement of Restitution § 112 (listing "request" as an exception supporting restitution). Euclid's request can be inferred from the lease provisions making the Tenant responsible for all tenant finish construction, which would eventually become the property of Euclid. Moreover, Euclid retained the right specifically to approve the improvements and had an agent monitoring

the work. Most importantly, Euclid's agent specifically informed R.A.S. that it planned on contributing $60,000 to help pay for the construction under certain conditions.

## III.

For the foregoing reasons, Euclid was an active participant with regard to the construction and, therefore, should pay for the improvements that it will keep. Based on my dissent in *DCB Construction,* 965 P.2d at 125, I would follow the court of appeals' holding in *Hall* and would allow the trial court's ruling to stand. *See Hall,* 747 P.2d at 691. There is sufficient evidence in the record supporting the trial court's ruling that Euclid was unjustly enriched and should pay R.A.S. for part of the construction. Accordingly, I respectfully dissent.

I am authorized to say that Justice SCOTT joins in this dissent.

---

**1.** As I noted in my dissent in *DCB Construction,* the applicability of the rule in *Duggan* to this type of case is questionable. *See DCB Constr.,* 965 P.2d at 124. The "initiate or encourage the transaction" requirement in *Duggan* applied to a situation where an unjust enrichment claim undermined the predictability created by a statutory scheme. *See Duggan,* 821 P.2d at 797 (holding that unjust enrichment claim could prevail con-trary to the UCC priority system). There is no applicable statutory scheme in this case, so the "initiate or encourage the transaction" requirement in *Duggan,* while relevant, may not be dispositive. *See Cedar Lane Invs. v. American Roofing Supply of Colorado Springs,* 919 P.2d 879, 885 (Colo.App.1996) (distinguishing the unjust enrichment rule in *Duggan* because no statutory scheme existed).